[Civ. No. 35377. Second Dist., Div. Four. Oct. 19, 1970.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. RICHARD SHMITKA, Defendant and Appellant.

## COUNSEL

Braslow & Oria and Jeffrey K. Oria for Defendant and Appellant.

Grogan & Hogan and Stephen J. Grogan for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant appeals from a judgment in favor of an automobile insurance carrier, rendered in a declaratory relief action brought against him by the carrier. For the reasons set forth below, we affirm the judgment.

### STATEMENT OF THE FACTS

On December 31, 1966, defendant Richard Shmitka was injured while riding in an automobile owned and operated by his friend Steven Swanson when it collided with another vehicle. Clarence Shmitka, the father of Richard, owned automobile insurance policy 4262415-6-19 issued by respondent Allstate Insurance Company, covering five described automobiles, wherein five insurance extension certificates were issued, each bearing uninsured motorist coverage of $10,000, and each separately paid for. This insurance policy was in full force and effect at the time of the accident and under its terms Richard was entitled to coverage since he resided in his father's household at the time of the accident.

Pursuant to such coverage and the terms of the subject policy, Richard

filed a claim against respondent with the American Board of Arbitration as outlined in section II of the same policy.

Before the arbitrator reached a decision, but after both parties introduced evidence, Allstate Insurance Company filed suit for declaratory relief to determine the extent of the policy coverage under the uninsured motorist section, and further obtained an injunction restraining the arbitration proceedings pending determination of the subject suit.

The trial court found that Allstate Insurance Company did not submit the issue of insurance or the amount of the policy limit to the arbitrator. It further found and held that the maximum coverage available to Richard was $10,000.

Pursuant to such findings, judgment was entered in favor of plaintiff and respondent, Allstate Insurance Company, permanently enjoining the arbitration of uninsured motorist policy limits, declaring that the maximum coverage available to defendant and appellant is $10,000, and dissolving the pending injunction so that the arbitration proceedings between the parties might proceed to a decision not inconsistent with the trial court's determination.

### ISSUES[1]

On this appeal, defendant contends: (1) that the five extension certificates entitle him to a cumulative recovery under all such certificates, to a total of $50,000; and (2) that, in any event, the carrier had, prior to the interruption of the arbitration by the preliminary injunction voluntarily submitted the issue of the extent of liability to the arbitrator, thereby barring it from now contending that that issue is not arbitrable.

Defendant contends: (1) that whether or not the issue of extent of coverage had been submitted by it to arbitration was a question of fact as to which the trial court's determination is conclusive; and (2) that, on the merits, it is liable only to the extent of $10,000, if at all.

### I

Since a determination in favor of defendant on the second of his contentions as above set out would require a reversal of the judgment, we consider it first. For the reasons hereinafter stated, we affirm the judgment as to that issue.

■ Ordinarily, "[a]n insurance clause which repeats the language of subdivision (e) of section 11580.2 without material change [the pre-1968

---

[1]We restate the issues involved in somewhat different language than that used in the briefs.

code] requires arbitration solely of the issues relating to liability of the uninsured motorist to the insured, and it excludes therefrom the determination of the amount of money which the insurance company must pay. . . ." (*Farmers Ins. Exch.* v. *Ruiz* (1967) 250 Cal.App.2d 741, 744 [59 Cal.Rptr. 13]; *Commercial Ins. Co.* v. *Copeland* (1967) 248 Cal.App.2d 561, 564-565 [56 Cal.Rptr. 794]; see also *Campbell* v. *Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105 [67 Cal.Rptr. 175].) Code language is, in fact, repeated in the arbitration clause of the policy so that the general rule that arbitration can reach only issues of liability is in effect in the case at bar. Yet, if the parties submit additional issues to arbitration, the general rule does not apply.

That the parties may voluntarily submit to arbitration issues other than those compelled by the statute and the policy is, by now, well settled. (*O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107 [308 P.2d 9]; *Campbell* v. *Farmers Ins. Exch., supra* (1968) 260 Cal.App.2d 105; *Fidelity & Cas. Co.* v. *Dennis* (1964) 229 Cal.App.2d 541 [40 Cal.Rptr. 418].) And, once a nonstatutory issue has voluntarily been submitted to arbitration, a party may not unilaterally withdraw that issue. (*Gerard* v. *Salter* (1956) 146 Cal.App.2d 840, 844 [304 P.2d 237].)

However, the courts will not infer a voluntary submission of a nonstatutory issue in the absence of a clear showing that the parties so intended, either by actual litigation or argument of the issue, as in *Dennis*, or by some other unambiguous conduct. (*Campbell* v. *Farmers Ins. Exch., supra* (1968) 260 Cal.App.2d 105; *Key Ins. Exch.* v. *Biagini* (1967) 250 Cal.App.2d 143 [58 Cal.Rptr. 408].)

In support of his contention, defendant cites us to portions of the transcript of the hearing before the arbitrator. We cannot say that the trial court was wrong in interpreting those proceedings as showing nothing more than that defendant consistently tried to introduce the issue of extent of coverage and that the carrier's counsel, with equal consistency, objected to all offers of evidence on that issue.[2] On the record before us, we hold that the trial court correctly decided that the issue of the extent of coverage had not been submitted to arbitration and that, therefore, that issue was before the trial court for determination. We affirm so much of the judgment as so determined.

[2]It is true that counsel might have stated his objection to the jurisdiction of the arbitrator more explicitly. But it is clear that he did not agree to litigate the issue and, since defendant must show a clear intent to go beyond the statutory issues, any minor ambiguity is not fatal to the carrier's present position.

## II

We turn, thus, to consider whether or not the trial court correctly decided, on the merits, that the carrier's maximum liability is $10,000 rather than $50,000. We conclude that it did.

Subdivision (a) of section 11580.2 of the Insurance Code, as it read at the times herein applicable, required that uninsured motorist coverage be included to protect the insured in every automobile liability insurance policy. Subdivision (b) defines the "insured" as the named insured or spouse or relatives living in the household *or* any other person "while in or upon or entering into or alighting from an insured motor vehicle"; insured motor vehicle is defined as "the motor vehicle described in the underlying insurance policy." (Ins. Code, § 11580.2, subd. (b).)

It is evident that (prior to the 1968 amendment) *any* insured member of the household would at all times be insured regardless of whether all of the household's autos were expressly covered. In other words, the question might be asked, why did Mr. Shmitka need five extension certificates upon which he paid five separate premiums if his son was to be insured for the same amount of coverage had he purchased insurance for one car only? The defendant answers this question by saying that the "floating" nature of the uninsured motorist coverage leads to the inescapable conclusion that five "floating" policies are therefore five times as good. In interpreting the statutory language, however, defendant neglects the clear language of the code which, in addition to defining "insured" as the named insured and the relatives in his household, also includes persons "entering into or alighting from an insured motor vehicle." Thus, we answer the question of the necessity of five premiums, as the trial court did; namely, the additional premiums represent payments for the extra risks taken on by the insurance company. Not only does the language of the code make such risks mandatory by creating uninsured motorist liability to *anyone* that might ride in any of Clarence Shmitka's five cars, but the record clearly reflects that this was the intent of the insurance company. It was stipulated at trial that if an official of Allstate Insurance Company were called as a witness, he would testify that insurance companies, including respondent, "regularly charge a basic uninsured motorist premium for one car and additional premiums for such coverage for each additional car covered by a given policy for the reason that the insurer's risk increases with each additional insured car; that the annual premium of $7.00 charged for the first car and the annual premium of $6.00 charged for each additional car were the standard rates then applicable to the Subject Policy; . . ." In light of this stipulation, together with the language of the Insurance Code, defendant's contention that five premiums could

*only* mean a $50,000 coverage and not a $10,000 coverage is not persuasive. This is *not* to say that the insurance company could not have intended to insure appellant for $50,000, but that there is sufficient evidence to support the contrary intention, as well as a clear justification for such intent in the Insurance Code.

We now turn to a discussion of applicable case law which may shed light upon the parties' intentions.

In the case of *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal. App.2d 210 [58 Cal.Rptr. 243], the policy in question contained a provision which denied recovery to a resident of the household who owned an automobile not insured by the defendant. The insured's father was such a person, and, while on foot, was struck and killed by a vehicle driven by an uninsured motorist. The insurance company denied recovery on the basis of the exclusionary clause. The Court of Appeal in the first district held that such an exclusion did *not* amount to a waiver of the statutory requirement of insuring all resident members of the household under Insurance Code section 11580.2, even though the coverage itself could be totally omitted from the policy by written agreement.

*Cannizzo* v. *Guarantee Ins. Co.* (1966) 245 Cal.App.2d 70 [53 Cal. Rptr. 657], and *Grunfeld* v. *Pacific Auto Ins. Co.* (1965) 232 Cal.App.2d 4 [42 Cal.Rptr. 516], also cited by defendant, simply reiterate *Lopez* and state that the rights of the parties are to be determined by the terms of their policy provided it grants benefits equal to or greater than those required by the statute.

Despite defendant's accuracy in citing the correct law of these three cases, the point which he wishes to illustrate appears somewhat faulty. That is, defendant cites these cases to further support his view that had he obtained uninsured motorist coverage on only *one car,* he would have still been entitled to $10,000. This proposition is true as a matter of law but it neglects the realities of the situation, namely, whether or not the insurance company would have taken on the extra risks involved in four additional automobiles.

Even the *Lopez* case expressly states that the insurance company may omit uninsured motorist coverage by written agreement. Thus, if the respondent shows that it would not grant any coverage of any kind to a person situated as was Clarence Shmitka *unless* all of the insured's autos are covered, such a showing would tend to reiterate that Allstate would not take on such extra risks without proper remuneration. The stipulation

referred to above also stated "that plaintiff and other insurance companies followed the practice of requiring a named insured who had more than one automobile to either reject uninsured motorist coverage with respect to all of his cars or purchase such coverage on all of his cars." It was further stipulated that if the named insured were called as a witness, he would testify that Allstate had never communicated the necessity of uninsured motorist coverage on either all or none of the cars. Yet, the stipulation on respondent's behalf not only adheres to the law as stated in *Lopez* and *Cannizzo, supra* (that uninsured motorist coverage can be deleted by written agreement), cases cited for *defendant's* position, but the carrier's position is also a consistent answer to the risks created by the Insurance Code as applied to uninsured motorist coverage for unnamed persons. Carrying this portion of the analysis to its final step, defendant's contention that, since one premium would, by law, insure defendant for $10,000, therefore five premiums *must* insure him for $50,000, has questionable merit.

Other problems of interpretation of the subject policy must also be resolved. Defendant argues that there are five, not one, policies in effect, citing page 16, condition 3 of the policy: "When two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each, . . ." Defendant claims that this separate application creates an additional policy for each car. To evaluate this contention, those terms of the policy which are to be applied separately must be examined.

On page 7 of the policy (plaintiff's Exh. 1) the company delineates the limits of its liability: "The limits of Allstate's liability stated on the Supplemental Page under Coverage S as applicable thereto:

"1. 'each person' is the limit of Allstate's liability for all damages arising out of bodily injury sustained by one person in any one accident;

"2. 'each accident' is, subject to the above provision respecting each person, the total limit of Allstate's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one accident."

Page 6 of the same policy defines coverage S as uninsured motorist coverage. At the outset it should be noted that defendant cites no authority for his interpretation that a separate application of the terms of the policy to each car necessarily means that there are five separate policies of $10,000 each. We assume that appellant relies on the general principle that ambiguities are to be construed against the insurer. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801,

57 A.L.R.2d 914].) In the case of *Yates* v. *Interinsurance Exchange* (1969) 275 Cal.App.2d 301 [79 Cal.Rptr. 604], identical provisions were interpreted. In examining *bodily injury liability,* this court stated that the "insurer's liability was plainly limited to $25,000 for injury to one person," and not $50,000 on the basis that the insured had two automobiles under his coverage. Regardless of whether the insurance was primary, as found in *Sullivan* v. *Royal Exchange Assurance* (1960) 181 Cal.App.2d 644 [5 Cal.Rptr. 878], or excess, as in *Yates,* the court found that the specific language in the policy respecting a $25,000 limit for "each person" was clear and unambiguous.

Additional authority to support the carrier can be found in *Pacific Indem. Co.* v. *Thompson* (1960) 56 Wn.2d 715 [355 P.2d 12], cited in *Yates* with approval, where the court rejected a contention that condition 4 of the policy (which provides that all of the policy's terms shall apply separately to each described automobile) operated to increase the policy limits. The Washington State court stated (at p. 716) "that provision merely assures the applicability of the policy to whichever car is involved in an accident, or to all the cars and does no more."

*Sullivan* v. *Royal Exchange Assurance, supra* (1960) 181 Cal.App.2d 644, the first case in California to decide this issue, was itself based upon a California rule of interpretation found in the Code of Civil Procedure, section 1859, which stated, ". . . in the construction of the instrument . . . when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." The *Sullivan* court also cites a string of Louisiana decisions to support its conclusions. (For the most recent Louisiana case in *accord,* as to medical payment provision, see *Odom* v. *American Ins. Co.* (La. App. 1968) 213 So.2d 359; for a case expressly disagreeing with *Sullivan* (on similar facts) *see Kansas City Fire & Marine Ins. Co.* v. *Epperson* (1962) 234 Ark. 1100 [356 S.W.2d 613]; see generally 21 A.L.R.3d 900, propounding the general rule of *aggregate* coverage.)

"[W]here the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed [citations]." (*New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510].) Not only do *Yates* and *Sullivan* indicate the clarity of these provisions, other cases have also interpreted "each person" and "each occurrence" contained in the liability policy as clear, definite and certain so that liability

was not extended. (*Valdez* v. *Interinsurance Exchange* (1966) 246 Cal.App.2d 1 [54 Cal.Rptr. 906]; *Perkins* v. *Fireman's Fund Indem. Co.* (1941) 44 Cal.App.2d 427 [112 P.2d 670].)

The defendant nevertheless attempts to distinguish *Sullivan, supra,* and therefore the similar cases cited above, on the basis that these cases dealt with medical provision payments where an extra premium was necessary for full coverage, whereas this was not so with uninsured motorist coverage prior to 1968. Appellant cites *Lopez* v. *State Farm Fire & Cas. Co., supra* (1967) 250 Cal.App.2d 210 [58 Cal.Rptr. 243], which says at page 212: "No statute, however, *requires* medical pay coverage, [as opposed to uninsured motorist coverage] save as medical expense may be an element of the liability indemnified against. Thus the parties are free to negotiate upon the subject." (Italics added.) In *Lopez,* medical payment recovery could not be had on a car which was not insured in the policy. As has already been indicated, this does not hold true for uninsured motorist coverage.

It is argued that, since one payment would have still covered appellant, the cited cases interpreting the words "each person" and "each accident" as superseding the provision that the terms of the policy shall apply separately to each automobile is not herein applicable. Thus, in the *Sullivan* case, for instance, the insurance company had good reason to charge two premiums since it was not *required* to insure for medical coverage on automobiles not listed.

Yet, in light of the language in *Sullivan* and *Yates,* in addition to the fact that respondent did show good reason for the extra charges (increase in risks) we interpret the terms of the policy so as to limit its liability to $10,000. "Each clause . . . must be considered with reference to every other clause upon which it has any bearing and all the provisions are to be construed together. . . ." (*Protex-A-Kar Co.* v. *Hartford Acc. etc. Co.* (1951) 102 Cal.App.2d 408, 413 [227 P.2d 509].) It appears that the clear intention manifested by the policy is to so limit its liability and our "primary object is to ascertain and carry out the intention of the parties." (*New York Life Ins. Co.* v. *Hollender, supra* (1951) 38 Cal.2d 73, 81, cited in the *Sullivan* case.)

A further manifestation of such intent is that the "each person" and "each accident" provision is, by its terms, made directly applicable to uninsured motorist coverage ("coverage S"), and therefore falls directly in line with Code of Civil Procedure section 1859, as cited in *Sullivan.*

Since we conclude that the policy in question cannot properly be construed to cast on the carrier cumulative liability for the uninsured motorist

,risk, we need not consider the additional arguments based on the "other insurance" clauses in the certificates.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.