[S.F. No. 24782. Dec. 5, 1985.]

LEE A. WAGNER et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
et al., Defendants and Respondents.

462

COUNSEL

Michaud, Weber & De Vries, Michaud, Weber, De Vries & Hernandez and Michael C. Weber for Plaintiffs and Appellants.

Leonard Sacks, Robert H. Sulnick, Robert E. Cartwright, Wylie A. Aitken, Harlan Arnold, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, David S. Casey, Jr., Victoria De Goff, Douglas K. deVries, H. Grieg Fowler, Sanford M. Gage, Ian Herzog, G. Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Arne Werchick and Stephen I. Zetterberg as Amici Curiae on behalf of Plaintiffs and Appellants.

Nagle, Vale, McDowall, Cotter & Schwartz and William D. McDowall for Defendants and Respondents.

OPINION

KAUS, J.*—Section 11580.2 of the Insurance Code[1] provides for quasi-compulsory uninsured motorists (UM) coverage for most kinds of automobile liability policies. Among others, UM coverage protects as insureds the named insured, as well as family members living in the same household. (§ 11580.2, subd. (b).) Subdivision (d) of section 11580.2 (subdivision (d)) permits UM policies to provide "that if the insured has insurance available to him under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and such damages shall be prorated between the applicable coverages as the limits of each coverage bears to the total of such limits."[2]

In the case at bar the insured was covered by two UM coverages contained in identical, but separate policies issued by the same insurer. Each contained the following as part of condition 9: ". . . [Under UM coverage] if the insured has other similar insurance available to him against a loss covered by this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this coverage for a greater proportion of the applicable limit of liability of this coverage than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The issues on this appeal are: (1) whether condition 9 complies with subdivision (d); (2) whether the fact that the two policies were issued by the same insurer nullifies its effect; and (3) whether—assuming issues (1) and (2) are resolved in the insurer's favor—the record shows a triable issue on certain noncontractual theories pleaded, such as fraud, unfair practices, or breach of the covenant of good faith and fair dealing.

I

Plaintiff Susan K. Welch is the stepdaughter of plaintiff Lee A. Wagner and the daughter of plaintiff Barbara W. Wagner. She lived with the Wag-

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] Unless otherwise specified, all statutory references are to the Insurance Code.

[2] Translated into insurance jargon, subdivision (d) permits UM coverage to contain a provision to avoid "stacking." "Stacking" is sometimes defined to mean the recovery by a claimant several times over for his injuries. (*Langston* v. *Allstate Ins. Co.* (1978) 40 Md.App.414 [392 A.2d 561, 569].) It has also been held to refer to "the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy would alone be inadequate" to compensate for the actual damages suffered. (*Nationwide Ins. Co.* v. *Gode* (1982) 187 Conn. 386 [446 A.2d 1059, 1060, fn. 2].) The term is used in its latter sense in this opinion; plaintiffs do not seek recovery in excess of their actual damages.

ners who had in effect two liability policies issued by State Farm: (1) a policy on an International Travelall, first issued in 1973, and (2) a policy on a Porsche, first issued in 1975. Each policy provided for UM coverage, but contained condition 9, the antistacking clause. Each policy charged a semiannual premium of $4.50 for UM coverage. Each policy's applicable limit of UM coverage was $15,000.

On April 24, 1977, Susan was seriously injured in a collision between an uninsured automobile and an uninsured motorcycle on which she was riding as a passenger. Liability under State Farm's UM coverage is conceded. It is also undisputed that Susan's damages exceed $15,000. She demanded that State Farm pay her damages up to the policy limits of both policies—$30,000. State Farm refused, but did pay $15,000. Any additional liability was left to litigation.

Plaintiffs later filed the present action in which they assert State Farm's liability in excess of $15,000 on a number of theories. Before the action was at issue, however, plaintiffs had filed a separate petition to compel arbitration. The petition was opposed by State Farm on the theory that since plaintiffs were bound to lose the arbitration, there was nothing to arbitrate. The petition was denied. Plaintiffs did not appeal. (Code Civ. Proc., § 1294, subd. (a).)

Eventually State Farm moved for summary judgment on two grounds, (1) the validity and applicability of the antistacking provisions of its policies; and (2) the res judicata effect of plaintiffs' still-born attempt to arbitrate. The motion was granted and summary judgment in State Farm's favor was eventually entered.

On appeal State Farm seeks to uphold the judgment on both grounds urged in the trial court. Since we agree that the antistacking clauses of the State Farm policies limited plaintiffs' recovery to $15,000—the amount already paid—we need not discuss State Farm's more questionable res judicata point.

## II

■ Attempting to avoid the impact of subdivision (d) altogether, plaintiffs attack condition 9. They claim, in wholly conclusory fashion, that it is uncertain, ambiguous, "all but incomprehensible" and "contractual gobbledygook." When one examines plaintiffs' argument, however, the real complaint coincides with their argument that subdivision (d) and, hence,

condition 9, do not apply where both policies are issued by the same insurer.[3] As such it will be dealt with in part III of this opinion.

In any event it appears to us that the policy condition is as clear as subdivision (d) allows.[4] The statute limits the damages to the higher of the applicable limits. The policy condition does the same, using almost identical language. The statute then provides for prorating among the applicable coverages "as the limits of each coverage bears to the total of such limits." The policy condition expresses precisely the same formula from the point of view of the carrier. While condition 9 uses a few more words than the statute, that is inherent in the nature of the problem and hardly turns a quite clearly expressed formula into "gobbledygook."

### III

We now turn to the central problem of this appeal: the applicability of subdivision (d) to multiple policies issued by the same insurer. As background to our discussion we note that antistacking clauses in UM coverages have spawned a surprising number of reported cases.[5] These, in turn, have provoked a certain amount of scholarly comment.[6] As may be expected, the various courts' attitudes toward antistacking clauses vary all the way from ready acceptance to open hostility. No useful purpose would be served in

---

[3]For example, ". . . it tortures the language of § 11580.2 and STATE FARM's policy to suggest that they even remotely apply to a 'one-insurer' context . . . ."

[4]The statutory language is, perhaps, more ponderous than necessary. Compare a similar Ohio statute quoted in *Karabin* v. *State Auto. Mut. Ins. Co.* (1984) 10 Ohio St. 3d 163 [462 N.E.2d 403, 405]: "'Any automobile liability . . . policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverages.'" It must be noted, however, that the quoted portion of this Ohio statute does not deal with the problem most difficult to express: the prorating among the affected coverages.

[5]Numerous annotations in American Law Reports have collected the decisions of various jurisdictions in particular factual situations relating to uninsured motorist coverage, the "other insurance" clause, and stacking. (Annots., Combining or "Stacking" Uninsured Motorist Coverages Provided in Policies Issued by Different Insurers to Different Insureds (1984) 28 A.L.R.4th 362; Combining or "Stacking" Uninsured Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Different Insured (1983) 23 A.L.R.4th 108; Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured (1983) 23 A.L.R.4th 12; Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions (1969) 28 A.L.R.3d 551; Combining or "Stacking" Uninsured Motorist Coverages Provided in *Separate Policies* Issued by *Same Insurer* to *Same Insured* (1983) 25 A.L.R.4th 6.) (Italics added.) We are concerned in this case only with the situation described in the last of these annotations.

[6]See, e.g., Note, *Contractual Attempts to Limit Liability Under Uninsured Motorist Coverage* (1978) 47 Cin.U.L.Rev. 245, 255-258; Davis, *Uninsured Motorist Coverage: Some Significant Problems and Developments* (1977) 42 Mo.L.Rev. 1, 17-23; York, *"Stacking" Uninsured Motorist Protection, Medical Payments, and Personal Injury Protection Coverages in Texas* (1976) 7 St. Mary's L.J. 837, 838-842.

surveying the field in detail, since we are confronted with an almost[7] unique situation: the effect of antistacking clauses in separate policies issued by the same insurer to the same insured, where a state statute expressly authorizes such clauses.

Actually there is a surprising dearth of California cases involving subdivision (d) and policy conditions written pursuant thereto. We count precisely two.[8]

The first is *Mid-Century Ins. Co.* v. *Koch* (1970) 11 Cal.App.3d 1019 [90 Cal.Rptr. 280], a case identical with ours, except that two different companies were involved. Without extended discussion the court denied the insured's claim that he was entitled to UM benefits under both policies. Even brisker was the same division of the same Court of Appeal in *Rudder* v. *Farmers Ins. Exchange* (1980) 107 Cal.App.3d 158 [165 Cal.Rptr. 562, 21 A.L.R.4th 205], which involved four policies, with limits totalling $60,000. Each policy contained the condition permitted by subdivision (d). The cumulative liability was held to be limited to $15,000.[9]

■■■ Thus we finally reach the issue presented by this appeal: whether subdivision (d) and policy conditions written pursuant thereto are of no

[7]Almost, but not quite. While we have not made a thorough state-by-state check, it appears that at least three states—Florida, Maryland and Louisiana—have statutes which actually prohibit stacking. (See discussions in *Dewberry* v. *Auto-Owners Ins. Co.* (Fla. 1978) 363 So.2d 1077, *Rafferty* v. *Allstate Ins. Co.* (1985) 303 Md. 63 [492 A.2d 290] and *Sciple* v. *Cosse-Hickey Co. Inc.* (La. 1985) 468 So.2d 15.) Iowa and Tennessee, as well as Ohio (see fn. 4, *ante*) have statutes which expressly permit antistacking clauses. (See *Davenport* v. *Aid Ins. Co.* (Mutual) (Iowa 1983) 334 N.W.2d 711 and *Jones* v. *Mulkey* (Tenn.App. 1981) 620 S.W.2d 498.) Ohio passed the statute from which we quote in footnote 4, *ante*, in 1980. With respect to losses incurred before the statute went into effect, the Ohio Supreme Court had held that in view of the remedial purpose of UM legislation, antistacking clauses were simply not to be given effect. The accident involved in *Karabin* v. *State Auto. Mut. Ins. Co.*, *supra*, 462 N.E.2d 403, however, took place in 1981. The Ohio Supreme Court did not hesitate to apply the statute to the insured who had two policies, issued, incidentally, *by the same company*.

[8]For present purposes we ignore *Allstate Ins. Co.* v. *Shmitka* (1970) 12 Cal.App.3d 59 [90 Cal.Rptr. 399] which involved not just two, but five UM coverages, all written by the same carrier. *Shmitka* did not permit stacking without even referring to subdivision (d) or relying on the "other insurance" clause. (*Id.*, at p. 69.)

Also not quite in point is *Prieto* v. *State Farm Mut. Automobile Ins. Co.* (1969) 268 Cal.App.2d 891 [74 Cal.Rptr. 472], which did not involve the insured, whose losses perhaps did not exceed the limits of either policy. Two policies were involved: State Farm's which had an excess clause if the insured was injured while in an automobile not owned by him, and Farmers', which had a condition prorating losses among companies, similar to condition 9. The court held that in spite of the "excess" language of its policy, State Farm was compelled to prorate as provided by subdivision (d). (For the sake of completeness we note that the two State Farm policies involved in this case have similar excess clauses in addition to condition 9. Neither side suggests that these excess clauses have any bearing on the issues before us.)

[9]It so happens that two of the four policies were issued by the same insurer, Farmers. The point at issue in this case was, however, not argued.

effect where the policies are issued by the same company. Two arguments in favor of this proposition are advanced: (1) Application of the antistacking condition is unfair where both policies are written by the same company, because the insured pays two premiums but receives nothing for the second which he does not already have by virtue of the first; and (2) subdivision (d) which provides for prorating between insurers is not applicable where, because of the identity of carriers, there is nothing to prorate.

In support of the first argument plaintiffs look myopically at the injured plaintiff Susan K. Welch. They point out that each of the two UM coverages involved was obtained for an identical premium payment of $4.50. If only the first policy had issued and, therefore, only one premium had been paid, she would have received $15,000. State Farm contends, of course, that she should get no more than that even though it issued two policies and received two premiums. Why, ask plaintiffs, should State Farm get a windfall of, possibly, as much as $15,000? What did plaintiffs get for the second premium? The answer is simple: additional protection for additional risks. While this additional protection does not increase the maximum payable to any particular member of plaintiffs' family, the reason why two premiums were paid was that two cars were being operated with a correspondingly greater risk of injury to more persons on a greater number of occasions. The issue is beautifully laid to rest by a leading writer in the field: "If there were but a single insured, and only he ever drove an automobile, obviously he can drive only one vehicle at a time and the reasoning of such courts might then be logical. But, in considering basic underwriting and the actuarial computation of rate structures, we must take into consideration the customary procedures of mankind. Automobile policies are now written so as to afford liability protection not only to the named insured, who is usually the owner, but to members of his family, perhaps persons residing in the same household and—with a few exceptions—anyone operating with the permission of the named insured or adult members of his household. When it comes to UM coverages, we have a like multiplication of exposure, since we have classes of risk, including all of the persons stated above, and pedestrians as well, with benefits granted in many circumstances when one may be in another vehicle or even upon the highway. [¶] When the insured then owns more than a single vehicle, almost always it is with the contemplation that the second, or third, vehicles will be operated by others. And those others may, also, if injured by an uninsured motorist, expose the insurer to loss under that aspect of the contract." (8C Appleman, Insurance Law and Practice (1981) § 5101, pp. 449-450.)[10]

---

[10]Precisely the same point is made in *Allstate Ins. Co.* v. *Shmitka, supra,* 12 Cal.App.3d at pages 64-66, even without relying on an antistacking clause. As noted that case involved coverages on five vehicles issued by the same insurer. Plaintiffs seek to distinguish the case,

Common sense also tells us that plaintiff's point proves too much. Plaintiffs must concede that if the second policy had been written by, say, Travelers, the $15,000 limit would apply. Yet under the prorating provision of the statute, State Farm would be entitled to a contribution of $7,500 from Travelers. Thus State Farm's exposure would have been halved without it having received any consideration therefor. A windfall is a windfall. It will not do to say that the halving of the loss in the State Farm-Travelers situation is an unexpected lucky break, unavoidable if subdivision (d) is to be given any effect, while the possible involvement of two State Farm policies is precisely what the insurer should have foreseen when it collected two premiums. The answer is that "breaks"—good or bad—are what premium calculations are all about. If California did not permit antistacking clauses and State Farm could not assume decreased exposure per policy because of the occasional contribution by another applicable policy—whether written by itself or another carrier—plaintiffs simply would have been unable to purchase UM coverage for $4.50.

The other reason advanced for not applying subdivision (d) where but a single carrier is involved, is that in such a case the prorating provisions of the subdivision could not take effect. ■ With all respect, that argument permits the solution to wag the problem. It seems likely that the Legislature called for prorating of all applicable coverages for two reasons: first, to avoid endless squabbles based on the relationship between the named insured, the vehicles involved in the accident, and the injured claimant, and, second, to forestall a legal game of scissors-paper-stone, triggered by antistacking provisions being couched as "escape," "excess" or "proration" clauses. (See *Prieto* v. *State Farm Mut. Automobile Ins. Co.*, *supra*, 268 Cal.App.2d 891.) Of course none of those problems arises when only one insurer is involved.

■ Whatever may have been the problem which the Legislature tried to solve by calling for prorating across the board, it is safe to assume that it did not consider the arithmetical exercise involved in prorating as an end in itself. Subdivision (d) provides for coverage at the highest available limit. If more than one company is involved, prorating will have to take place. If all policies are issued by the same company, that step can be skipped, or becomes a paper exercise in the office of a single insurer. Certainly no one— insurer or insured—is worse off because after the insured has been paid the full limit called for by the statute and the policy, prorating can be avoided.[11]

because the opinion stated that the insured paid $7 for the UM coverage on the first car and only $6 for such coverage on each of the others. The opinion, however, makes nothing of that fact.

[11]In *Glidden* v. *Farmers Automobile Insurance Assn.* (1974) 57 Ill.2d 330 [312 N.E.2d 247, 250], the Illinois court fell victim to the same confusion between purpose and effect.

## IV

As noted earlier, plaintiffs' complaint is couched in several causes of action. Plaintiffs label these "breach of duty of fair dealing and good faith," "breach of fiduciary duties," "common law fraud," "statutory fraud and deceit" and "breach of statutory duties." Inspection of the complaint, however, reveals that plaintiffs' theories are based on the assumption that they are not subject to subdivision (d) and condition 9, or that State Farm, at least, owed them a duty to inform them expressly that it was not furnishing the coverage which they thought they were getting. Since State Farm furnished precisely such protection as was demanded by statute and clearly delineated in its policies, these causes of action are built on quicksand. Further, when State Farm's motion for summary judgment challenged plaintiffs assertions, the declaration quoted below was the best they could come up with.[12] Clearly, while it shows disappointment on plaintiffs' part, it does not even hint at an actionable wrong by State Farm.

Affirmed.

Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.

**MOSK, J.**—I dissent.

By denying plaintiff the right to aggregate her uninsured motorist (UM) coverage, the majority have reached a harsh result. Plaintiff was injured by

---

It said: "The apparent purpose of 'other insurance' clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared by another company. There is no purpose in proration unless the 'other insurance' is written by another company." The Arizona court was dead right when, in *State Farm Mutual Automobile Insurance Company* v. *Williams* (1979) 123 Ariz. 455 [600 P.2d 759, 763], it called this reasoning naive: "The sole purpose of the 'other insurance' clause *is to decrease the liability of the insurer under the policy.*" (Italics added.) If this purpose can be achieved without prorating, so much the better.

[12]The declaration of plaintiff Lee A. Wagner said in part: "One of the features that attracted me to State Farm and induced me to purchase State Farm Automobile Insurance was their advertisements and their statements that they granted multi-car discounts. I assumed and believed that by reason of the fact that my premiums on my uninsured motorist vehicle were always the same that I was purchasing identical insurance for each premium. No State Farm agent or employee ever told me anything different than that. [¶] I was shocked, surprised, amazed, upset and distressed when State Farm advised me that only one of the policies in effect would cover the serious injuries sustained by my step-daughter and that even though the premiums were identical for all the different cars on all the different policies for uninsured motorist coverage, the 2nd, 3rd and 4th premiums, although identical, were for considerably less insurance. As I understand it from my attorney, the only additional uninsured motorist coverage I was purchasing after my first car was for accidents for the specific vehicle that I was insuring and all other events and incidents that are covered by uninsured motorist coverage were not covered by my additional insurance coverage beyond the first vehicle."

an uninsured motorist and her damages were in excess of $30,000. She was covered by two separate insurance policies with the same carrier, each providing for up to $15,000 in UM coverage. Yet, because of the majority's gratuitous reading of the "antistacking" clause of the Insurance Code (Ins. Code, § 11580.2, subd. (d)), she will receive only $15,000, less than half of her actual damages. In effect, plaintiff receives no benefit whatever from the second UM policy, although she paid, and State Farm received, a full premium for it.

There is a sharp division of authority among the jurisdictions as to whether clauses similar to that included in plaintiff's policy can be applied to limit damages so that the insured is not entitled to full recovery under the UM endorsement of more than one policy. (See Widiss, A Guide to Uninsured Motorist Coverage (1969) §§ 2.59, 2.60, 2.61, pp. 106-116 [hereinafter Widiss, Guide to UMC]; *Glidden v. Farmers Automobile Insurance Ass'n* (1974) 57 Ill.2d 330 [312 N.E.2d 247, 249-250].) A majority, however, refuse to enforce antistacking provisions in insurance policies. (Widiss, Guide to UMC (1981 Supp.) §§ 2.59, 2.60, 2.61, pp. 198-222.) These courts reason that to allow an insurer to prorate damages results in the issuance of a policy below the limits required by the uninsured motorist statute (e.g., *United Farm Bureau Mut. Ins. Co. v. Runnels* (1978) 178 Ind.App. 435 [382 N.E.2d 1015, 1016-1017]), and that the insured is entitled to and reasonably expects to recover under each policy because he has paid separate premiums for such coverage. (E.g., *Glidden v. Farmers Automobile Insurance Ass'n, supra,* 312 N.E.2d 247, 250-251.) As a leading commentator on California uninsured motorist law queried, "Assume an insured pays for extra coverage, might it not be assumed that he wishes to be protected for *all* the damages he might suffer and not just be bound by the minimal limits of the financial responsibility law?" (Eisler, Cal. Uninsured Motorist Law Handbook (3d ed. 1979) § 8.7, p. 242.)

The majority here conclude that plaintiff has received something for the second premium: "additional protection for additional risks." This "added risk" apparently arises from the possibility that if both the insured cars were being driven at the same time they might be involved in simultaneous accidents with uninsured motorists. I submit that such added risk is as remote as being struck by Halley's comet and is not an element of second car UM coverage that the insured could reasonably have contemplated. Furthermore, such actuarial hypothesizing does not withstand scrutiny because of the peculiarities of UM coverage.

UM coverage is not tied to the use of a particular vehicle, or to the particular insured who pays the premiums. It covers—as in the present case—relatives living in the same household, when driving the insured's

car, but also when driving in someone else's uninsured vehicle, and even when injured as pedestrians. Obviously, even with a single UM policy, it is already calculated into the premiums that two accidents could occur simultaneously. When a single carrier sells two policies with UM coverage, the risk it reasonably contemplates is not more accidents, but liability on both policies when one accident occurs. In no case does the added risk cited by the majority account for the full premium charged to plaintiff's father on the second of his two policies. Rather, by virtue of the majority's holding, State Farm will be unjustly enriched at plaintiff's expense.

The majority apply the code's proration clause (Ins. Code, § 11580.2, subd. (d)) to the present facts with the view that if prorating is avoidable, so much the better. I agree with the majority that the main purpose of the prorating clause is to avoid controversies among insurance companies. It assures that an insurer does not pay a disproportionate amount of the loss that is to be shared by another insurer. (See 8C Appleman, Insurance Law and Practice (1981) § 5102.45, p. 486.)

As the majority concede, the Legislature did not contemplate prorating by a single insurer where it would be a mere arithmetical exercise. I would conclude from this, however, not that the statute applies nonetheless to the present facts, but that it is meaningless where, as here, a single insurer is involved. (See *Woolston* v. *State Farm Mutual Insurance Company* (W.D.Ark. 1969) 306 F.Supp. 738, 742; *United Sec. Ins. Co.* v. *Mason* (1978) 59 Ill.App.3d 982 [376 N.E.2d 653, 656]; *Glidden* v. *Farmers Automobile Insurers Ass'n, supra,* 312 N.E.2d 247, 250; *United Services Automobile Association* v. *Dokter* (1970) 86 Nev. 917 [478 P.2d 583, 584].)

Nothing in the legislative history or case law supports the majority's assertion that the "other insurance" clause is aimed to protect insurance companies by minimizing their liability. So long as there is no recovery for a plaintiff beyond the amount of actual damages, the thrust of the UM statute is to protect injured parties, not to allow insurance companies to collect premiums for coverage they know they will not provide. Worse than prorating for its own sake would be paying premiums for their own sake, and I conclude that the Legislature contemplated neither. The policy in California has always been to encourage the purchase of insurance—that was why UM coverage was made quasi-mandatory by statute. Requiring multiple premiums for no more coverage than is provided by a single policy frustrates the legitimate expectations of the insured who paid for the UM policies.

The California cases cited by the majority in support of their position are distinguishable. *Rudder* v. *Farmers Insurance Exchange* (1980) 107 Cal.App.3d 158 [165 Cal.Rptr. 562, 21 A.L.R.4th 205], and *Mid-Century*

*Insurance Co.* v. *Koch* (1970) 11 Cal.App.3d 1019 [90 Cal.Rptr. 280], held that subdivision (d) and the "other insurance" clause in the policy prohibited stacking, but these cases could have applied the pro rata clause because they involved policies issued by different insurers.[1]

In sum, the limitation on uninsured motorist coverage authorized by subdivision (d) should not apply where, as here, the policies are issued by the same insurer and there is no likelihood that the insured will recover more than his actual damage. Thus, I would conclude that the "other insurance" provision in State Farm's policy, which echoes subdivision (d), is also inapplicable and State Farm should be held liable for the payment of UM benefits under both policies.

Bird, C. J., concurred.

Appellants' petition for a rehearing was denied January 16, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[1]*Koch* goes on to state that even in the absence of a provision like subdivision (d), most jurisdictions hold that the uninsured motorist coverages may not be stacked. (11 Cal.App.3d at p. 1023.) It cites for this proposition Widiss, Guide to UMC. Whatever may have been the situation in 1970, when *Koch* was decided, the 1981 supplement to the Widiss treatise acknowledges that the majority of the jurisdictions invalidate antistacking clauses in insurance policies. (1981 Supp. §§ 2.59, 2.60, 2.61, pp. 198-222.)