65 Cal.Rptr.3d 451 (2007)
154 Cal.App.4th 1253
ALLSTATE INSURANCE COMPANY, Plaintiff and Appellant,
v.
MERCURY INSURANCE COMPANY, Defendant and Respondent.
No. B189977.
Court of Appeal of California, Second District, Division Six.
September 5, 2007.
*452 Pollak, Vida & Fisher, Scott J. Vida and Daniel P. Barer, Los Angeles, for Plaintiff and Appellant.
Hager & Dowling, John V. Hager, Chad M. Slack, and Holly C. Blackwell, Santa Barbara, for Defendant and Respondent.
GILBERT, P.J.
Insurance code section 11580.2, subdivision (d), provides that an insurance policy may require that uninsured motorist "(UM)" coverage be prorated when an insured has coverage under more than one UM policy.[1] The section was designed to "avoid endless squabbles" engendered by claims made under "multiple policies." (Wagner v. State Farm Mutual Auto. Ins. Co (1985) 40 Cal.3d 460, 468, 220 Cal.Rptr. 659, 709 P.2d 462.)
Here the section did not achieve its goal. Two insurance companies make cogent arguments concerning the meaning of clauses pertaining to UM coverage in their respective policies. We conclude the statute is clear. The policy with the proration provision takes preference over the policy with the excess coverage provision. Squabble over.
Allstate Insurance Company ("Allstate") appeals a summary judgment in favor of Mercury Insurance Company ("Mercury"). We affirm.

FACTS AND PROCEDURAL HISTORY
This lawsuit concerns a dispute between two insurance companies regarding which of two competing clauses in their respective uninsured motorist insurance policies apply to compensate a passenger injured in an automobile collision with an uninsured motorist. Thus, Mercury's UM insurance policy, insuring the automobile owner, contains a "pro-rata coverage" provision; Allstate's UM insurance policy, insuring the injured passenger, contains an "excess coverage" provision.
On May 24, 2005, Allstate brought this action against Mercury, alleging causes of action for declaratory relief and equitable contribution. Mercury answered the complaint and then moved for summary judgment. The parties stipulated to these material facts:
On August 7, 2003, Meyan Mendoza was a passenger in a 1998 Mitsubishi automobile driven by Ivanrey Capistrano. Capistrano's parents owned the automobile and Mercury insured it. At an Oxnard intersection, an uninsured motorist drove through a red traffic signal and collided with the Capistrano automobile. Mendoza suffered personal injuries from the collision. The uninsured motorist fled the accident scene; the owner of that automobile was also uninsured,
Mendoza filed a personal injury claim with Mercury. She also filed a claim with Allstate, pursuant to an automobile insurance policy issued to her parents. The Mercury insurance policy has a UM damages limitation of $30,000 per person, and the Allstate insurance policy has a UM damages limitation of $250,000 per person.
The Mercury insurance policy contains this pro-rata provision: "[I]f the insured *453 has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and such damages shall be prorated between the applicable coverages as the limit of each coverage bears to the total of such limits." In essential respects, the Mercury insurance provision is identical to section 11580.2, subdivision (d).
The Allstate insurance policy contains this excess coverage provision: "If the insured person was in ... a vehicle you do not own which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy."
Mercury and Allstate disagreed regarding the respective amounts that each was required to pay to settle Mendoza's $52,500 claim. Mercury claimed that Allstate must contribute a pro-rata share; Allstate claimed that its insurance was excess coverage to Mercury's UM $30,000 damages limitation. The parties agreed to jointly settle Mendoza's claim, however, and then dispute the legal question regarding the competing insurance clauses. In sum, Mercury contributed $18,150, and Allstate contributed $34,350, in settlement of Mendoza's claim.
The trial court granted summary judgment in favor of Mercury and concluded that Allstate must contribute 89 percent to Mendoza's settlement. The trial court reasoned that section 11580.2, subdivisions (c)(2) and (d), and CalFarm Ins. Co. v. Wolf (2001) 86 Cal.App.4th 811, 103 Cal. Rptr.2d 584, required proration between Allstate and Mercury. It ruled: "The statutes, case law and policies at issue show that because there are two uninsured motorist coverages for the insured that are not similar in amount the insurers must prorate the damages claim among themselves. There is no primary and excess insurer."
Allstate appeals and contends that its excess insurance clause prevails over Mercury's pro-rata clause. It asserts that it is entitled to summary judgment in its favor.[2]

DISCUSSION

I.
Allstate asserts that its excess coverage provision is impliedly authorized by section 11580.2, and it governs Mercury's pro-rata coverage clause. It asserts that its interpretation simplifies the injured-insured's negotiations and allows him to obtain higher UM insurance coverage for which he paid. Allstate relies upon judicial opinions from foreign jurisdictions. (Eggleston v. Townsend (D.Md.1972) 336 F.Supp. 1212, 1218-1219; Keel v. MFA Ins. Co. (Okla.1976) 553 P.2d 153, 156.)
Specifically, Allstate argues that the law's policy favors treating the vehicle owner's policy as primary, and all other applicable insurance coverage as excess. (American Automobile Ins. Co. v. Republic Indemnity Co. (1959) 52 Cal.2d 507, 512-513, 341 P.2d 675 [regarding "other insurance" clauses in competing liability policies].) It points to section 11580.9, subdivision (d), providing that "it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described ... as an owned automobile shall be primary and the insurance afforded by any other policy or policies *454 shall be excess." Allstate concedes that section 11580.9 concerns liability policies and not UM policies, but it argues that the common law regarded the vehicle owner's policy as primary.

II.
Insurance contracts are contracts to which the ordinary rules of contract interpretation apply. (County of San Diego v. Ace Property & Casualty Ins. Co. (2005) 37 Cal.4th 406, 415, 33 Cal.Rptr.3d 583, 118 P.3d 607.) We independently review an order granting summary judgment involving the interpretation of an insurance policy and undisputed facts. (Id., at p. 414, 33 Cal.Rptr.3d 583, 118 P.3d 607.)
Pursuant to well-settled rules of statutory construction, we interpret a statute to effect its legislative intent. (Kobzoff v. Los Angeles County Harbor/UCLA Medical Center (1998) 19 Cal.4th 851, 860, 80 Cal. Rptr.2d 803, 968 P.2d 514.) "[A] statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need or should go beyond that pure expression of legislative intent." (Id., at p. 861, 80 Cal.Rptr.2d 803, 968 P.2d 514; Scottsdale Ins. Co. v. State Farm Mutual Automobile Ins. Co. (2005) 130 Cal.App.4th 890, 898, 30 Cal.Rptr.3d 606 [if statute is "clear and unambiguous, we will give effect to its plain meaning"].) Thus, in determining intent, we first look to the wording of the statute. (CalFarm Ins. Co. v. Wolf, supra, 86 Cal.App.4th 811, 815, 103 Cal.Rptr.2d 584.) If the words are clear, there is no need for construction. (Ibid.)

III.
Section 11580.2 is a remedial statute that forces insurers to provide coverage against the menace of uninsured motorists. (CalFarm Ins. Co. v. Wolf, supra, 86 Cal.App.4th 811, 816, 103 Cal.Rptr.2d 584.) It sets forth minimum requirements of UM insurance coverage. (Hefner v. Farmers Ins. Exchange (1989) 211 Cal. App.3d 1527,1532, 260 Cal.Rptr. 221.)
Section 11580.2, subdivision (d), permits a UM insurance policy to require proration if the insured has insurance available under more than one UM policy: "Subject to paragraph (2) of subdivision (c), the policy or endorsement may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and the damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits." Subdivision (c)(2) provides: "The insurance coverage provided for in this section does not apply either as primary or as excess coverage ...: (2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section." (Italics added.)
Section 11580.2, subdivision (d), is commonly referred to as an "anti-stocking clause." (Wagner v. State Farm Mutual Auto. Ins. Co., supra, 40 Cal.3d 460, 463, fn. 2, 220 Cal.Rptr. 659, 709 P.2d 462.) "Stacking" may mean a claimant's repeated recovery for his injuries. (Ibid.) It may also mean a claimant's attempt to recover his claim from a second policy where recovery from a first policy is inadequate to compensate for his injuries. (Ibid.)
The Legislature likely created the proration requirement of section 11580.2, subdivision (d), to "avoid endless squabbles based on the relationship between the *455 named insured, the vehicles involved in the accident, and the injured claimant" and to "forestall a legal game of scissors-paper-stone, triggered by anti-stacking provisions being couched as `escape,' `excess,' or 'proration'." (Wagner v. State Farm Mutual Ins. Co., supra, 40 Cal.3d 460, 468, 220 Cal.Rptr. 659, 709 P.2d 462 [dictum].)
The exclusion of subdivision (c)(2), refers to UM insurance coverage that is similar in amount. (CalFarm Ins. Co. v. Wolf, supra, 86 Cal.App.4th 811, 813, 103 Cal. Rptr.2d 584 [amounts not similar where vehicle owner has $30,000 UM insurance coverage and injured-insured has $100,000 in such coverage].) "The primary purpose of subdivision (c)(2) is to prevent double recovery by the injured insured where more than one UMC policy may be implicated." (Id., at p. 817, 103 Cal.Rptr.2d 584.)
As the parties agree, subdivision (c)(2) is inapplicable here because the two UM insurance policies are not "similar" in their damage amounts. (CalFarm Ins. Co. v. Wolf, supra, 86 Cal.App.4th 811, 824, 103 Cal.Rptr.2d 584.) Indeed, the particular UM coverages are "widely disparate" in amounts. (Id., at p. 815, 103 Cal.Rptr.2d 584.)
Section 11580.2, subdivision (d), is applicable here, however, and requires Allstate to participate in proration of Mendoza's damages claim. Although a UM insurance policy is not required to include the proration method of subdivision (d), if the insurance policy does so, "the provision must be given effect." (Prieto v. State Farm Mut. Automobile Ins. Co. (1969) 268 Cal.App.2d 891, 893, 74 Cal.Rptr. 472.) "Otherwise, the enactment of such legislation is meaningless. What possible reason could the Legislature have had to pass such a measure if it did not intend that the provision which it authorized was to be enforceable?" (Ibid.) Where a UM insurance policy contains the statutory proration clause of section 11580.2, subdivision (d), "it must be given deference." (Planet Ins. Co. v. United Services Automobile Assn. (1994) 23 Cal.App.4th 1256, 1262, 29 Cal.Rptr.2d 100.)
It is true that the factual circumstances of Prieto v. State Farm Mut. Automobile Ins. Co., supra, 268 Cal.App.2d 891, 74 Cal.Rptr. 472, and Planet Ins. Co. v. United Services Automobile Assn., supra, 23 Cal.App.4th 1256, 29 Cal.Rptr.2d 100, differ from those here. Prieto involved an automobile passenger injured in a collision with an uninsured motorist. The passenger had coverage under two different UM insurance policies issued to his parents. One policy contained a proration clause and one policy contained an excess coverage clause. Planet concerned an employee, injured in a collision with an uninsured motorist, while driving an automobile owned by her employer's customer. The employee had three UM insurance policies available to compensate for her injuries. One of the three policies contained an excess coverage provision and one of the policies contained a proration provision. Although neither Prieto nor Planet concerned a conflict between an owner's UM insurance policy and an injured-insured's policy, it matters not. The reasoning of the decisions remains compelling and applies here.
No language in section 11580.2, subdivision (c)(2), expressly or impliedly authorizes an excess coverage provision to predominate over section 11580.2, subdivision (d). To conclude otherwise would nullify the proration requirement of subdivision (d), if included in a UM insurance policy. Where the proration provision is included in a UM insurance policy, it must be given effect. (Prieto v. State Farm Mut. Automobile Ins. Co., supra, 268 Cal.App.2d 891, 893, 74 Cal.Rptr. 472.)
*456 The foreign state cases cited by Allstate are not persuasive because they do not involve a UM statute similar to section 11580.2, authorizing proration between UM insurance policies. The factual circumstances of the cases also differ from the circumstances here.
The judgment is affirmed. Appellant to bear costs on appeal.
We concur: YEGAN and COFFEE, JJ.
NOTES
[1] All further statutory references are to the Insurance Code.
[2] Allstate filed its own motion for summary judgment. The trial court did not rule upon Allstate's motion prior to granting summary judgment in favor of Mercury.