[No. B029970. Second Dist., Div. Two. Aug. 11, 1988.]

NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v. BEVERLY JILL FRANKEL, Defendant, Cross-complainant and Respondent.

COUNSEL

Gilbert, Kelly, Crowley & Jennett, Peter J. Godfrey, Tracy W. Goldberg and Clifford H. Woosley for Plaintiff, Cross-defendant and Appellant.

Frank Revere, Jan Frankel Schau and Revere, Rykoff & Wallace for Defendant, Cross-complainant and Respondent.

OPINION

**FUKUTO, J.**—This is an appeal from a declaratory judgment rejecting an insurer's assertion of noncoverage under the uninsured motorist portion of an automobile insurance policy.

The insurer sued its insured for a judicial declaration of noncoverage. The insured cross-complained against the insurer for bad faith, pleading the usual tort, contract, and statutory theories of recovery. This cross-complaint was severed, and its resolution deferred, while the insurer's declaratory judgment claim was tried. Consequently the declaratory judgment from which the insurer appeals is a nonfinal judgment, and hence nonappealable. (E.g., *Crocker-Anglo Nat. Bank* v. *Kuchman* (1961) 194 Cal.App.2d 589 [15 Cal.Rptr. 230].)  ■  The severance of the complaint from the cross-complaint does not make the judgment on the complaint separately appealable, unlike the situation in *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 [123 Cal.Rptr. 669], because the complaint raises issues closely related to

those posed by the yet-untried cross-complaint. Hence we lack jurisdiction to hear the appeal.

We will, however, treat the appeal as a petition for a writ of mandate (see, e.g., *Olson* v. *Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720]), and our order placing the cause on calendar will be deemed an order to show cause why the petition should not be granted. We thus decide the case on its merits.

The facts are undisputed. Respondent, Beverly Jill Frankel, was an additional named insured under an automobile policy procured by her father as named insured and issued by appellant, National Automobile and Casualty Company. The policy included uninsured motorist coverage with a policy limit of $500,000. This policy was in force when Frankel, driving someone else's automobile, sustained serious injuries in a traffic accident caused by an uninsured motorist. The automobile Frankel was driving at the time of the accident was covered by insurance maintained by its owner through another carrier, State Farm Insurance Company. This State Farm policy included uninsured motorist coverage with a policy limit of $30,000, and these benefits covered Frankel. State Farm agreed to pay Frankel the full policy limit of $30,000.

National, however, denied coverage under Frankel's own policy, relying on portions of the following three consecutive paragraphs in the policy: "The following provisions apply with respect to the Uninsured Motorists Coverage in lieu of the 'Other Insurance' provisions of the policy:

"[A] *Other Insurance:* With respect to bodily injury to any insured occupying an automobile other than an owned automobile to which the Liability Coverage applies, the insurance hereunder shall not apply if the owner of such automobile has insurance similar to that provided for herein.

"[B] Subject to the preceding paragraph, if the insured has other similar insurance available to him, any damages shall be deemed not to exceed the higher of the applicable limits of the respective coverages and such damages shall be pro-rated between such coverages in such proportion as each coverage bears to total of such limits." The notations [A] and [B] do not appear in the policy; we have inserted them to clarify the ensuing discussion.

National's position was that clause [A] was applicable to the facts, and therefore, according to its terms, "the insurance hereunder shall not apply." National further contended that clause [B] was inapplicable, because its

introductory phrase ("Subject to the preceding paragraph") meant, in effect, "If [A] is applicable to the facts, then [B] will not be applicable."

Frankel also had two contentions. The first was that clause [A] was inapplicable to the facts, because due to the enormous disparity of the policy limits in the two policies, the State Farm coverage was not "insurance similar to that provided for herein." Her second contention was that the introductory phrase of clause [B] ("Subject to the preceding paragraph") was too ambiguous to bear the interpretation National placed on it, so that [B] stood as National's binding promise of pro rata benefits in this case.

The trial court sustained both of Frankel's contentions.

There is no doubt that clauses [A] and [B] were inspired by Insurance Code section 11580.2, subdivisions (c)(2) and (d) respectively. These two provisions say: "(c) The insurance coverage provided for in this section does not apply either as primary or as excess coverage to: [¶] (1) . . . [¶] (2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section. [¶] (3)-(7) . . . [¶] (d) Subject to paragraph (2) of subdivision (c), the policy or endorsement may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and such damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of such limits."

The presence of the ambiguous phrase "Subject to paragraph (2) of subdivision (c)" makes reconciliation of these two provisions difficult.[1] Without that phrase, the two provisions, read together, would mean "If the insured is injured in a vehicle other than the one he has insured, and the owner of that vehicle maintains similar insurance, the injured insured's own policy will not provide benefits unless it specifically says it will." With the addition of the ambiguous cross-reference, however, it becomes harder to reconcile the two provisions, since subdivision (d) purports to be overridden by subdivision (c)(2), leaving unclear what, if anything, remains of subdivision (d).

---

[1] See *Wagner* v. *State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460, 465 & footnote 4 [220 Cal.Rptr. 659, 709 P.2d 462].

Section 11580.2 was enacted in 1961 and amended 21 times to date. None of the amendments bears on this case.

National explains subdivision (d) (and its own clause [B]) as covering only the situation where the insured is injured while a pedestrian, or while an occupant of someone else's car not covered by uninsured motorist coverage procured by its owner, and the injured insured himself also has a second uninsured motorist policy. This reading is less than self-evident, and it is hard to swallow National's characterization of such a situation as a "much broader, even universal" one compared with Frankel's situation.

■ The question is ultimately one of interpreting the provisions of National's policy. National, in effect, proposes the following reading of the policy: "This policy assures you and your family half a million dollars protection against uninsured motorists, if you are injured while in your car, on foot, on a bicycle, in an uninsured car belonging to someone else, or in a car belonging to someone else who has automobile insurance without uninsured motorist coverage. If, however, the injury occurs while you or your family member are in a car belonging to someone else who has insurance with uninsured motorist coverage, then this policy gives you no protection whatsoever."

It would take clearer language than that found in Frankel's policy to compel this result. The trial court properly interpreted the policy to mean, "If you are in an accident and are entitled to the benefits of other similar insurance in addition to your benefits under this policy, then the policy limits of the two policies will not be stacked, but rather you will be compensated for your injuries up to the limit of whichever policy carries the higher limit. The sum you recover will be shared by both insurers."

This reading is consistent with the apparent philosophy of the no-cumulation-of-benefits clauses sprinkled liberally throughout section 11580.2. (See subds. (c)(4), (d), (e), (h)(1), (h)(2), (q).)

National's position necessarily centers on the meaning of the introductory phrase of clause [B] ("Subject to the preceding paragraph"). It contends this phrase clearly means "In the event the preceding paragraph is inapplicable." "Subject to" means contingent or conditional upon, as in "subject to my approval." (Webster's New 20th Century Dict. (2d ed. unabridged 1962) p. 1813.) This usage refutes National's reading, for the phrase suggests clause [B]'s application is "contingent on paragraph [A]'s applying," whereas National claims it means "contingent on paragraph [A]'s *not* applying."

■ Furthermore, the introductory phrase of clause [B] tracks subsection (d) of the statute, and it seems clear that subdivision (d) authorizes insurers, if they wish, to insert optional policy provisions more favorable to

the insured than the no-coverage principle of subdivision (c)(2). (*Kirby* v. *Ohio Cas. Ins. Co.* (1965) 232 Cal.App.2d 9, 13 [42 Cal.Rptr. 509]; *Phoenix Assur. Co.* v. *Larsen* (1966) 240 Cal.App.2d 94, 97 [50 Cal.Rptr. 111].) As pithily explained in *Prieto* v. *State Farm Mut. Automobile Ins. Co.* (1969) 268 Cal.App.2d 891, 893 [74 Cal.Rptr. 472], "Although an insurance policy is not *required* to contain the provision permitted by section 11580.2, subdivision (d), if it does so, the provision must be given effect. Otherwise, the enactment of such legislation is meaningless."

■    National points out that the familiar rule requiring courts to construe ambiguous policy provisions in the insured's favor is inapplicable when the policy provision simply restates terminology found in a statute. (E.g., *Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 314-315 [118 Cal.Rptr. 596].) In such a situation, rules of statutory construction apply instead.

This principle does National as much harm as good. National chose to paraphrase, not parrot, the statute. In the process, it transmuted a critical phrase in subdivision (d) ("more than one uninsured motorist coverage provision") into different policy language ("other similar insurance"). ■ ■ ■ ■    In its attempt to improve on the statutory terminology, National both created an ambiguity that does not exist in the statute and also lost its shelter from the rule requiring adverse constructions of ambiguous policy language.[2]

■    The cases cited by the parties are not particularly useful, because each turns on its specific facts, including the provisions of the insurance policy. Even apart from the particular wording of the policy in this action, none of the cases involved the situation here: an insured injured in an automobile owned by another person who carried uninsured motorist coverage with policy limits lower than those afforded by the insured's own policy. In *California Casualty Indemnity Exchange* v. *Pettis* (1987) 193 Cal.App.3d 1597 [239 Cal.Rptr. 205] and *Interinsurance Exchange* v. *Alcivar* (1979) 95 Cal.App.3d 252 [156 Cal.Rptr. 914], the insured's own policy, unlike Frankel's policy, did not contain the extra provision authorized in subdivision (d). In *Phoenix Assur. Co.* v. *Larsen, supra,* 240 Cal.App.2d 94, *Grunfeld* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 4 [42 Cal.Rptr.

---

[2] It should be noted that section 11580.2 is a remedial statute enacted for the purpose of forcing insurers to make available coverage by which insureds can protect themselves from the menace of uninsured motorists. Ambiguous language in the statute must be given a construction that advances, not thwarts, its remedial purpose.

516], and *Kirby v. Ohio Cas. Ins. Co., supra,* 232 Cal.App.2d 9, the insured's policy afforded excess coverage to the extent the insured's policy limits exceeded those of the owner of the car in which the insured was injured—a feature not found in Frankel's policy—and since the policy limits were not greater than those of the owner of the car in which the insured was injured, under the terms of the excess clause no benefits were payable. In *California State Auto. Assn. Inter-Ins. Bureau v. Huddleston* (1977) 68 Cal.App.3d 1061 [137 Cal.Rptr. 690], the insurer of the negligently driven car in which the injured party was riding paid him the full $15,000 policy limit of the liability portion of the policy, and was thus, under an explicit statutory subrogation rule (Ins. Code, § 11580.2, subd. (h)), not required to pay him anything additional under the $15,000 uninsured motorist coverage of the policy. In *Security Nat. Ins. Co. v. Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439], the insured was injured in his own car, so his was the only policy affording uninsured motorist benefits. Finally, in *Wagner v. State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460 [220 Cal.Rptr. 659, 709 P.2d 462], *Prieto v. State Farm Mut. Automobile Ins. Co., supra,* 268 Cal.App.2d 891, *Rudder v. Farmers Ins. Exchange* (1980) 107 Cal.App.3d 158 [165 Cal.Rptr. 562, 21 A.L.R.4th 205], and *Mid-Century Ins. Co. v. Koch* (1970) 11 Cal.App.3d 1019 [90 Cal.Rptr. 280], the injured insured had multiple policies, but since he was not injured in an automobile whose owner had uninsured motorist coverage the (c)(2) exclusion was inapplicable.

Finally, National argues that the trial court's judgment impermissibly allows Frankel to stack, or cumulate, the coverages afforded by the two policies (see *Barrett v. Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 751 & fn. 2 [220 Cal.Rptr. 135]), and unlawfully treats the National policy as an excess policy (see § 11580.2, subd. (c)). Of course, it does nothing of the kind.

Because clause [B] afforded coverage in this case, it is unnecessary for us to decide what subdivision (c)(2) means by "insurance similar to that provided in this section," and what subdivision (d) means by "Subject to paragraph (2) of subdivision (c)."[3] National, in including clause [B] in its policy, took its own responsibility for the scope of coverage afforded thereby. Its limit of liability under the policy must be calculated under that policy clause, and is 500/530 x $500,000, or $471,698.

---

[3] We mention only that the Legislature did not repeat the former phrase in subdivision (d), choosing instead to refer to "insurance available to the insured under more than one uninsured motorist coverage provision." Both phrases were enacted in 1961. It would be unusual to intend, by two different terminologies in a single enactment, to refer to the same thing.

The petition for writ of mandate is denied. Respondent will recover her costs.

Roth, P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 9, 1988.