[No. F009971. Fifth Dist. July 12, 1989.]

MARCELINA HEFNER, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

Counsel

Ara Ohanesian for Plaintiff and Appellant.

Stammer, McKnight, Barnum & Bailey, Frank D. Maul and Galen McKnight for Defendant and Respondent.

Opinion

**BROWN (G. A.), J.\***—Appellant Marcelina Hefner filed a complaint seeking a declaration that the insurance policy issued to her by respondent Farmers Insurance Exchange (Farmers) provided coverage under the uninsured-underinsured motorist provisions for bodily injury damages she sustained when the automobile she was riding in as a passenger was involved in an accident. Farmers demurred to the complaint. The trial court sustained the demurrer without leave to amend on the ground that Insurance Code

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

section 11580.2, subdivision (c)[1] precluded appellant from collecting under her own policy because she was an occupant in a nonowned vehicle carrying uninsured motorist insurance. An order of dismissal was entered. Hefner appealed.

The facts are taken from appellant's complaint because respondent's demurrer is treated as admitting all material facts properly pleaded, " 'but not contentions, deductions or conclusions of fact or law.' " (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) A copy of the Farmers policy is attached to and incorporated into the complaint.

Appellant sustained severe injuries in a motor vehicle accident while riding as a passenger in a vehicle owned and driven by appellant's sister, Mary Perez. The accident was entirely the fault of an uninsured motorist. Ms. Perez's automobile was insured by a policy issued by CIGNA which included uninsured motorist coverage with a single limit of $100,000 for each accident regardless of the number of injured claimants. It is conceded CIGNA's policy covered Hefner. Hefner also owned an automobile not involved in the accident which was insured by a policy issued by Farmers. The Farmers policy, which is the subject of this litigation, contained an uninsured motorist provision with limits of $300,000 for each accident and $100,000 for any one person.

CIGNA tendered the full $100,000 limit of its uninsured motorist coverage in settlement allocated as follows: $50,000 to appellant; $45,000 to Ms. Perez; and $5,000 to James Hefner, husband of appellant. The CIGNA policy limit was insufficient to fully indemnify Hefner for the damage she suffered in the accident.

Hefner requested Farmers to indemnify her for the uncompensated portion of her bodily injury damage pursuant to the uninsured-underinsured motorist coverage of her Farmers policy. Farmers denied coverage contending appellant was excluded because she was an occupant in a nonowned vehicle carrying uninsured motorist coverage.

## DISCUSSION

Uninsured motorist coverage is prescribed by section 11580.2 enacted in 1961. It is a remedial statute enacted for the purpose of forcing insurers to make available coverage by which insureds can protect themselves from the menace of uninsured motorists. (*National Automobile &*

---

[1] All statutory references are to the Insurance Code unless otherwise indicated.

*Casualty Ins. Co.* v. *Frankel* (1988) 203 Cal.App.3d 830, 836, fn. 2 [250 Cal.Rptr. 236].)

As was stated in *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, at page 336 [43 Cal.Rptr. 476]: "Unless the provisions of section 11580.2 of the Insurance Code, relating to damage caused by an uninsured motor vehicle, are deleted by an agreement in writing between the insurer and any named insured, such provisions become a part of every contract of bodily injury liability insurance issued or delivered in this state covering liability arising out of the ownership, maintenance or use of any motor vehicle. [Citation.] The statute sets forth the minimum requirements and its provisions are controlling on the subject of arbitration unless broadened by agreement of the parties. Here the contract of insurance was limited to the minimum requirements prescribed by the statute."

Since its enactment in 1961, section 11580.2 has been amended some 21 times generally expanding the coverage both in terms of the minimum requirements the policy must contain and the policy limits.[2] In 1984, the coverage was expanded to include underinsured coverage which "means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (§ 11580.2, subd. (p)(2).)

■  Turning to the specific facts of this case, the trial court denied coverage to Hefner under section 11580.2, subdivision (c)(2). That provision states: "(c)   The insurance coverage provided for in this section does not apply either as primary or as excess coverage to:

"·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"(2)   To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance *similar* to that provided in this section." (Italics added.)

The language of this section has remained the same since 1961. The key word is "similar." The trial court was of the opinion that notwithstanding the large difference in the amount of coverage carried on the Perez and Hefner cars, Hefner's insurance was "similar" to Ms. Perez's thereby precluding coverage under the Hefner policy. Farmers's position adopted by the trial court is that Farmers's coverage is excluded any time the insured is

---

[2]The current minimum coverage limits are $30,000 because of bodily injury or death for one person and $60,000 because of bodily injury or death of two or more persons. (§ 11580.2, subd. (m)(1) and (2).)

riding in a nonowned automobile which has uninsured motorist coverage with at least statutory limits. Farmers relies upon some older cases which have arrived at this result where the coverage under the owned and non-owned automobiles was the minimum limits.

Hefner distinguishes the above cases primarily on the ground that they all included two policies with the same limits so the issue of greater limits on the owned automobile was not faced. She also argues the purpose of this section (§ 11580.2, subd. (c)(2)) is to set the mandatory minimum limits of uninsured motorist coverage. Thus, when the Legislature used the phrase "insurance similar to that provided in this section" in subdivision (c)(2), it was most likely referring to the minimum coverage the owner must have before the guest's insurer can deny coverage. In other words, similar connotes equal to or greater than the required statutory uninsured motorist coverage.

Hefner also points out the inequity of denying coverage under her own policy. Hefner would be covered for the larger limits of her own policy if Perez's car had no uninsured motorist coverage or if Hefner was a pedestrian. However, because she happened to be riding in another car, the owner of which chose to carry lower uninsured motorist limits, she is not covered by the higher limits which she chose to purchase.

However, we need not decide the issue of the meaning of "similar" in the context of this case because we resolve the coverage question in favor of Hefner under the contract provisions of the policy. We have set forth the above discussion merely to point up the difficulties involved in interpreting the statutory language contained in section 11580.2, subdivision (c)(2), to place this case in proper perspective and to suggest that legislative clarification is required.

■ Section 11580.2 sets forth minimum requirements. An insurer that wishes to may insert policy provisions "more favorable to the insured than the no-coverage principle of subdivision (c)(2)." (*National Automobile & Casualty Ins. Co.* v. *Frankel, supra,* 203 Cal.App.3d 830 at pp. 835-836; *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243 [66 Cal.Rptr. 374]; *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333 at p. 336.) ■ It appears Farmers has done just that.

The Farmers policy provides in relevant part: "We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle." The only exclusion that may have application

to the factual situation before us is exclusion 4 which states: "This coverage does not apply to bodily injury sustained by a person:

". . . . . . . . . . . . . . . . . .

"4. If the injured person was occupying a vehicle you do not own which is insured for *this coverage* under another policy." (Italics added.)

The principles of interpretation applicable to insurance policies are well settled. ■ "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) However, " 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' " (*Id.* at pp. 807-808.)

"Any reasonable doubt as to uncertain language will be resolved against the insurer whether that doubt relates to the peril insured against or other relevant matters. [Citation.] The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.] An exclusionary clause must be conspicuous, plain and clear [citation] and must be construed strictly against the insurer and liberally in favor of the insured [citations]." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) ■ A further cardinal rule is: "The provisions of the policy as a whole as well as the exceptions to the liability of the insurer must be construed so as to give the insured the protection which he reasonably had a right to expect." (*Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 31 [212 Cal.Rptr. 852].)

■ "Whether language in a contract is ambiguous is a question of law." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

■ Farmers argues that the term "this coverage" is unambiguous in that it relates only to the type of coverage, i.e., liability coverage, uninsured motorist coverage, medical coverage, etc., and not to the amount of the limits. In this regard, Farmers points to the general insuring agreement at the beginning of the policy which recites in relevant part: "We will insure you for the coverages and the limits of liability shown in the Declarations of this policy."

However, under "PART II—UNINSURED MOTORIST, Coverage C—Uninsured Motorist Coverage," the word coverage is used to refer to amounts *and* limits. Thus, additional definitions paragraph 3b defines uninsured motorist as, "Insured by a bodily injury liability bond or policy at the time of the accident which provides *coverage in amounts* less than the limits of Uninsured Motorist Coverage shown in the Declarations." (Italics added.)

Further, under "Other Insurance," paragraph 2 states *"The amount of Uninsured Motorist Coverage we will pay* under Additional Definitions 3b shall be reduced by *the amount of any other bodily injury coverage* available to any party held to be liable for the accident." (Italics added.)

In addition, the policy provides in pertinent part:

"PART V—CONDITIONS

". . . . . . . . . . . . . . . . . . . .

"8. Termination or Reduction of Coverage

"a. Cancellation or reduction of coverage:

". . . . . . . . . . . . . . . . . . .

"(2) We may cancel . . . or reduce all or any portion of any coverage . . . :

". . . . . . . . . . . . . . . . . . .

"(b) . . . [¶] If we cancel or reduce all or any portion of any coverage, the notice we send you will describe that portion we are cancelling or reducing."

At the very least, the words "this coverage" are ambiguous and must be construed in favor of extending coverage to the insured. Moreover, reading the language as a layman would read it and not as it may be analyzed by one of Farmers's insurance experts (*Abellon* v. *Hartford Ins. Co., supra,* 167 Cal.App.3d 21, 31), Hefner would reasonably expect that the amount of uninsured motorist coverage she purchased would be available to her in the event of an accident. Accordingly, we interpret "this coverage" to mean uninsured motorist coverage with the limits contained in the policy in which the language is used (Farmers policy). Since Perez's policy limits were less than the Farmers's policy limits, the exclusion does not apply.

This interpretation places appellant in the same position she would have been in had she been driving her own vehicle when this accident occurred.

Interpreting the policy in this manner does not impermissibly permit policy limits to be combined to provide greater coverage in violation of the antistacking provisions of section 11580.2, subdivision (q).[3] The policy's "other insurance" provisions reduce the available coverage by the amounts paid under other policies. (See also § 11580.2, subd. (d).)

The judgment is reversed. Costs to appellant Hefner.

Best, Acting P. J., and Ardaiz, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 28, 1989. Panelli, J., & Kaufman, J., were of the opinion that the petition should be granted.

---

[3] Section 11580.2, subdivision (q) provides: "Regardless of the number of vehicles involved whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons."