**Debbie Ann HOWTON, Plaintiff,**

v.

**MID–CENTURY INSURANCE COMPANY, a California corporation, Defendant.**

No. 92–CV–0268–B.

United States District Court, D. Wyoming.

May 6, 1993.

E. James Burke, Rhonda Sigrist Woodard, Burke, Woodard & Bishop, Cheyenne, WY, for plaintiff.

John A. Coppede, Godfrey & Sundahl, Cheyenne, WY, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon defendant's motion to dismiss and plaintiff's motion in opposition thereto, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### *Background*

In February 1991, plaintiff Debbie Anne Howton ("Howton") incurred injury while riding as a passenger in a car owned by one Barbara Weatherill. Margaret Jones rear-ended the Weatherill vehicle causing injury to all parties. Margaret Jones' policy paid Howton $25,000 for Jones' liability and How-

ton received another $25,000 from the under-insured coverage provided by Weatherill's motor vehicle insurance.

Howton sought further compensation through her insurance policy with Mid–Century Insurance Company ("Mid–Century"). Howton asserts that, at the time of the accident, her policy provided "uninsured/under-insured motorist coverage." According to Howton, this coverage included "a motor vehicle which is insured by a bodily injury policy at the time of the accident which provides coverage in amounts less than the limits of un-insured motorist coverage shown in the declarations [of her policy]." Howton contends the plain language of her policy provides under-insured motorist coverage of $50,000 per person/$100,000 per occurrence. Thus, her policy should pay for the difference in coverage between the under-insured driver and what her policy provides. The parties do not dispute that Margaret Jones qualified as a driver of an under-insured vehicle at the time of the accident.

Howton submitted a claim to Mid–Century for the full amount of the under-insured motorist coverage, i.e., $100,000. Mid–Century refused to pay. Howton asserts that Mid–Century has refused to pay in bad faith. As a result, Howton contends Mid–Century's breach of her insurance policy has caused her consequential damages including damages for pain and suffering. By contrast, Mid–Century asserts that Howton's policy did not provide under-insured motorist coverage to her when riding in a vehicle owned by another which was covered by under-insured motorist provisions from another insurance policy.

### Standard of Review

The trial court determines the sufficiency of a complaint as a matter of law. *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986). "Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief. To reach this conclusion, we clothe plaintiff's claims in such fashion to presume all allegations true. 'The Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.'" *Id.*

"Granting defendant's motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Id.* at 978.

### Discussion

The issue before this Court is one of first impression, and, as alleged by the parties, is whether exclusionary language contained in the insurance policy is ambiguous as a matter of law. The dispute centers around the exclusionary language in Part II of the policy. The following quoted language purports to exclude Howton from the uninsured/under-insured coverage provided in her policy:

3. *This coverage* does not apply to **bodily injury** sustained by a person:

&ast; &ast; &ast; &ast; &ast; &ast;

c. If the injured person was **occupying** a vehicle you do not own which is insured for *this coverage* under another policy.

&ast; &ast; &ast; &ast; &ast; &ast;

**Other Insurance**

&ast; &ast; &ast; &ast; &ast; &ast;

2. We will not provide insurance for a vehicle other than **your insured car,** unless the owner of that vehicle has no other insurance applicable to this part.

(italics emphasis added).

■ This Court interprets the policy language according to five basic tenets of construction, recently summarized in the Wyoming Supreme Court case of *State of Wyoming ex rel. Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist.*, 844 P.2d 1099 (Wyo.1993). These tenets are: (1) the court should give words their "common and ordinary" meaning; (2) the court should determine what the parties reasonably intended from the policy's language; (3) the language of the policy should not be so strictly construed as to "thwart the general object of the insurance;" (4) the court should enforce the policy according to its terms absent an ambiguity; and (5) where the court finds ambigu-

ity, the policy should be construed liberally in favor of the insured; if the policy is "fairly susceptible" of two constructions, the court should adopt the one which favors the insured. *Id.* at 1101–02, *citing, Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 539 (Wyo.1987).

The Court finds instructive two related cases out of California courts, *Hefner v. Farmers Ins. Exch.,* 211 Cal.App.3d 1527, 260 Cal.Rptr. 221 (Cal.Ct.App.1989) and *Mid–Century Ins. Co. v. Gardner,* 9 Cal.App. 4th 1205, 11 Cal.Rptr.2d 918 (Cal.Ct.App. 1992). In *Hefner,* the California Court of Appeals decided whether the insurance policy at issue provided uninsured/under-insured motorist coverage, for injuries plaintiff Hefner sustained when the car in which she was a passenger was negligently hit. 211 Cal. App.3d at 1531, 260 Cal.Rptr. at 223. The accident in *Hefner* was entirely the fault of an uninsured motorist ("tortfeasor") who hit the car Hefner occupied. *Id.* The key issue was whether the term "this coverage" in the exclusionary provision unambiguously referred to the type of coverage, i.e., uninsured coverage or medical coverage, or referred to the limits of coverage outlined in the policy, i.e., $50,000 per person/$100,000 per occurrence. 211 Cal.App.3d at 1533, 260 Cal.Rptr. at 225.

The *Hefner* court held that the policy's language was ambiguous as a matter of law, relying on rules of contract interpretation remarkably similar to those employed by the Wyoming courts. In finding the policy language ambiguous, the *Hefner* court reasoned as follows:

> [W]e interpret "this coverage" to mean uninsured motorist coverage with the limits contained in the policy in which the language is used ([insurance company's] policy). *Since [tortfeasor's] policy limits were less than the [insurance company's] policy limits, the exclusion does not apply.* This interpretation places appellant in the same position she would have been in had she been driving her own vehicle when this accident occurred.
>
> Interpreting the policy in this manner does not impermissibly permit policy limits to be combined to provide greater cover-

age in violation of the antistacking provisions of section 11580.2, subdivision (q). The policy's "other insurance" provisions reduce the available coverage by the amounts paid under other policies.

211 Cal.App.3d at 1534, 260 Cal.Rptr. at 225–26 (footnotes omitted) (emphasis added). The *Hefner* court also implicitly adopted plaintiff's reasoning regarding the inequity of denying her coverage under her own policy.

> Hefner would be covered for the larger limits of her own policy if [tortfeasor's] car had no uninsured motorist coverage or if Hefner was a pedestrian. However, because she happened to be riding in another car, the owner of which chose to carry lower uninsured motorist limits, she is not covered by the higher limits which she chose to purchase.

211 Cal.App.3d at 1532, 260 Cal.Rptr. at 224.

In the later case of *Mid–Century Ins. Co. v. Gardner,* the California Court of Appeals confronted the other policy provision at issue in the case at bar, i.e., the "Other Insurance" clause. In *Gardner,* the court of appeals decided whether an "Other Insurance" provision, either read in conjunction with the "this coverage" provision analyzed in *Hefner* or read in isolation, was ambiguous as a matter of law. The *Gardner* court held that the "Other Insurance" provision was ambiguous, reasoning principally as follows:

> [I]t is far from clear what this exclusion was intended to cover. Its phraseology is odd, stating the insurer "will not provide insurance for a vehicle." (Emphasis added). After all, the uninsured motorist coverage promises to pay benefits to insured persons injured by an uninsured motorist; it does not promise to pay injuries connected with any particular vehicle. Does it mean that the insurer will not issue a policy under these circumstances? Or does it mean the same as the "Exclusions" exclusion, namely that "This coverage does not apply to bodily injury sustained by a person: ... [¶] 4. If the injured person was occupying a vehicle you do not own which is insured for this coverage under another policy"? (Emphasis deleted). *If it indeed is intended to mean the same thing as the other exclusion [that which the Hefner court analyzed], then it is sub-*

*ject to the same defect found in Hefner. If it means something different, then there is an irreconcilable conflict between the two clauses.* In such a case, the provision that affords coverage—here the "Exclusions" exclusionary clause, as construed by *Hefner*—controls.

9 Cal.App.4th at 1219, 11 Cal.Rptr.2d at 927. (emphasis added).

The *Hefner* and *Gardner* courts both found policy provisions almost identical to provisions now before this Court to be ambiguous. These courts further held that the "this coverage" provision combined with the "Other Insurance" provisions referred to "uninsured motorist coverage with the limits contained in the policy in which the language is used." 211 Cal.App.3d at 1534, 260 Cal. Rptr. at 225–26. As a result, the *Hefner* and *Gardner* courts allowed the insured to collect the difference between what tortfeasor's policy paid and what the insured's policy paid, where tortfeasor's limit was less than the insured's. *Id.*

In turn, Mid–Century properly refers this Court to the recent Wyoming Supreme Court decision of *State of Wyoming, ex rel., Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist., County of Teton,* 844 P.2d 1099 (Wyo.1993). Defendant cites *State ex rel. Farmers Ins. Exch.* for the proposition that the exclusionary provisions at issue in this case are clear and unambiguous as a matter of law and, therefore, defendant need not pay Howton anything.

In *State ex rel. Farmers Ins. Exch.,* the Wyoming Supreme Court analyzed whether the insured was entitled to collect pursuant to the uninsured/under-insured coverage provisions in his policy, where the insured had been injured by a third-party tortfeasor who was insured at the time of the loss, and whose insurer provided bodily injury liability coverage in an amount equal to the uninsured/under-insured limits of coverage provided in the insured's policy. The Wyoming Supreme Court held that:

> We perceive no ambiguity in the insurance contract at issue. The policy is clear on its face that the insured person is protected in the event that he sustains bodily injury damages caused by accident involving an uninsured or underinsured motorist. The tortfeasor in this instance was insured

with policy limits of $100,000. The motorist was not "uninsured" and, *since the tortfeasor's policy limits were the same as those in [plaintiff's] policy, the motorist was not "underinsured."* Thus, [plaintiff's] insurance company] has no contractual obligation to [plaintiffs] under the policy's uninsured motorist provision and is entitled to judgment as a matter of law.

844 P.2d at 1103. (emphasis added).

One of the problems in comparing *State ex rel. Farmers Ins. Exch.* to the case at bar is that the opinion in *State ex rel. Farmers Ins. Exch.* analyzed different language from the instant case. *Id.* at 1100–01. However, in *State ex rel. Farmers Ins. Exch.* the Wyoming Supreme Court pointed out that a tortfeasor is not considered "underinsured" relative to the plaintiff-insured's policy where the tortfeasor's insurance policy contained the same limits of coverage as the plaintiff-insured's policy. 844 P.2d at 1103.

This Court believes that *Hefner, Gardner,* and *State ex rel. Farmers Ins. Exch.* are readily harmonized. The three cases together reaffirm one of the most basic tenets of insurance/contract law: that the insured should get that which she bargained for. *See e.g., In re the Marriage of Spengler,* 5 Cal. App.4th 288, 299, 6 Cal.Rptr.2d 764, 772 (Cal. Ct.App.1992) (court interpreted spouse's insurance policy to effect benefit of the bargain); *State Farm Mut. Auto. Ins. Co. v. Wyoming Ins. Dept.,* 793 P.2d 1008, 1014 (Wyo.1990) (court upheld insurance regulation because regulation helped consumer to obtain proper benefit of the bargain). This Court reasons that courts tend to characterize policy language as "ambiguous" or "unambiguous" so as to give effect to what the parties intended. 'What the parties intended' is so intertwined with each party receiving the 'benefit of the[ir] bargain' as to be practically inseparable from one another for purposes of interpretation. This is why courts interpret the uninsured/under-insured provisions in a manner "[which] places [the insured] in the same position she would have been in had she been driving her own vehicle when the accident occurred." 211 Cal. App.3d at 1534, 260 Cal.Rptr. at 225–26.

In the instant case, Howton has received $25,000 in liability payments from

Jones, the tortfeasor, and $25,000 from Weatherill, the driver of the car that was hit by the tortfeasor. Her insurance policy with Mid–Century provides for $50,000 'per person' uninsured/under-insured coverage. She has received $50,000. Therefore, she received the full benefit of what she bargained for and Mid–Century need not pay her pursuant to the uninsured/under-insured motorist provisions of her policy.[1]

Furthermore, this Court reasons that it need not decide whether the provisions at issue in this case are 'ambiguous' as a matter of law because such a decision will not affect the case's outcome. On one hand, should this Court characterize the provisions as ambiguous, it could adopt the reasoning outlined in *Hefner* and *Gardner*. That is, the Court would read the provisions in such a way as to grant Howton the difference in coverage between her 'per person' policy limits and the insurance payments she received from Jones (tortfeasor) and Weatherill (driver). Howton already has received what she would have received had she been the driver of the car, $50,000.[2] Thus, under this analysis, Mid–Century would owe Howton nothing.

On the other hand, should this Court characterize the policy provisions as clear and unambiguous, it would adopt the reasoning in *State ex rel. Farmers Ins. Exch.* That is, the Court would find that the insurance policy stated clearly "that the insured person is protected in the event that he sustains bodily injury damages caused by an accident involving an uninsured or underinsured motorist." 844 P.2d at 1102. This Court would characterize Jones and Weatherill's combined coverage as "not under-insured" under Howton's policy, since what Jones' (tortfeasor) policy paid Howton plus what Weatherill's (driver) policy paid Howton aggregated to the same amount as the 'per person' limits found in Howton's policy. Thus, under this analysis, the exclusionary clause in Howton's policy would have been triggered and Mid–Century would owe Howton nothing.

This Court concludes that a finding of ambiguity would affect this case only where Howton had recovered some amount less than that provided for in her policy with Mid–Century. The above-cited cases suggest that a Court must give "full force and effect to the insurance contract itself, as well as to the intendment [sic] of such insurance policy provisions." 844 P.2d at 1102. Howton paid for automobile insurance which afforded her $50,000 per person uninsured/under-insured coverage. She received $50,000. Regardless of how this Court interprets the policy language, Howton got the full benefit of her bargain. For these reasons, it is

**ORDERED** that defendant's motion to dismiss be, and the same hereby is, **GRANTED.**

1. Howton might argue that driver Weatherill's policy limits were not precisely $25,000, but that Weatherill's insurance company merely paid Howton $25,000. Thus, Howton might contend that the aggregated 'per person' limits of Jones' and Weatherill's policies did not equal the 'per person' limits of Howton's policy as it did in *State ex rel. Farmers Ins. Exch.* On this basis, Howton would urge this Court to find against defendant Mid–Century and give her the chance to prove damages in excess of the $50,000 she has received thus far.

   Such an argument misses the point. The point is to give effect to the language in Howton's insurance policy such that she would receive the same coverage as a passenger as if she had been driving the car herself; that is, she should receive no more and no less under-insured motorist coverage as a passenger than as a driver. This logic is what animates the *Hefner, Gardner,* and *State ex rel. Farmers Ins. Exch.* decisions. Technical arguments which ignore this logic or other arguments which attempt to reveal some inherent clarity or ambiguity in the policy provisions, without more, give no guidance, set bad precedent, and ignore the underlying economic purpose of insurance policies.

2. This Court finds irrelevant the fact that there was only one source of payment in cases such as *State ex rel. Farmers Ins. Exch.* (tortfeasor's policy), and the fact that there are two sources of payment in the instant case (tortfeasor's policy and driver's policy). The bottom-line inquiry is whether the insured received the coverage she bargained for with *her* insurance company (assuming of course that she had properly proved damages). As noted in the *Hefner* opinion, courts should not interpret the language of the insurance policy to provide the insured with a windfall payment in excess of the coverage for which she bargained. 211 Cal.App.3d at 1534, 260 Cal.Rptr. at 225–26.