**FARMERS INSURANCE EXCHANGE, Plaintiff–Appellee,**

v.

**Ardella WALTHER, Defendant–Appellant.**

**No. 93CA1123.**

Colorado Court of Appeals, Div. II.

May 18, 1995.

Rehearing Denied June 8, 1995.

Certiorari Denied Sept. 25, 1995.

Retherford, Mullen, Johnson & Bruce, Neil C. Bruce, Joseph F. Bennett, Colorado Springs, for plaintiff-appellee.

Steven T. Nolan, P.C., Steven T. Nolan, Colorado Springs, for defendant-appellant.

Opinion by Judge ROY.

Defendant, Ardella Walther, appeals the summary judgment entered in favor of plaintiff, Farmers Insurance Exchange, denying her uninsured/underinsured motorist (UM/UIM) benefits under an insurance policy issued to her by Farmers. We affirm.

The facts are undisputed. Walther was insured by Farmers under a UM/UIM policy with a limit of $100,000 per person. She was injured in a two-vehicle accident while a passenger in a vehicle owned and driven by William McGinnis and insured with another carrier. The other vehicle was owned and driven by Cynthia Kahre who the parties have stipulated was entirely at fault in the accident and who carried liability insurance with a limit of $25,000 per person.

Walther has been paid the Kahre policy limit of $25,000 and an additional $75,000 by the McGinnis UM/UIM carrier under a policy that had a limit of $100,000 per person. Walther filed a demand for arbitration with Farmers seeking an additional $75,000 in benefits under her UM/UIM policy. Farmers declined payment and arbitration and commenced these declaratory judgment proceedings to determine the nature and extent of its liability to Walther.

Relying on *Shelter Mutual Insurance Co. v. Thompson,* 852 P.2d 459 (Colo.1993), the trial court concluded that Walther had been "fully compensated from all sources under the limitations of the policy provisions at issue and is not entitled to further recovery." In *Thompson,* our supreme court held that a provision prohibiting "stacking" of UM/UIM coverages contained in multiple policies the insured had with the same insurer did not violate public policy. Accordingly, the trial court entered the summary judgment here at issue.

## I.

The interpretation of a contract, including a contract for insurance, is an issue of law that may be reviewed *de novo.* As with any contract, we look to the language of the policy to ascertain the intent of the parties. *Union Insurance Co. v. Houtz,* 883 P.2d 1057 (Colo.1994).

A contract provision is ambiguous when it is reasonably susceptible to more than one meaning. *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993). Any ambiguities are to be construed against the drafter and in favor of the insured. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992).

Walther had UM/UIM coverage of $100,000 per person under her policy with Farmers. The UM/UIM coverage provided that Farmers will pay:

[A]ll sums which an *insured person* is legally entitled to recover as *damages* from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured person.* The *bodily injury* must be caused by *accident* and arise out of the ownership, maintenance or use of the *uninsured motor vehicle.*

(emphasis in original)

The insurance contract also contained the following pertinent exclusion (Exclusion Four):

Exclusions

This coverage does not apply to *bodily injury* sustained by a person:

. . . .

4. If the injured person was *occupying* a vehicle you do not own which is insured for this coverage under another policy.

(emphasis in original)

The Farmers' policy also contains an "Other Insurance" provision which governs the relationship of the policy to other policies providing coverage (Section Four). That provision provides:

4. We will not provide insurance for a vehicle other than *your insured car*, unless the owner of that vehicle has no other insurance applicable to this part.

(emphasis in original)

## II.

█ Farmers asserts that Exclusion Four is dispositive of Walther's claim. We agree that when read together Exclusion Four and Section Four are dispositive, and affirm.

In *Howton v. Mid–Century Insurance Co.*, 819 F.Supp. 1010 (D.Wyo.1993), the United States District Court for the District of Wyoming interpreted and applied the two provisions identical to those at issue here under similar circumstances. In *Howton*, the insured was injured while a passenger in a car that was rear-ended by another car. The tortfeasor's carrier paid her $25,000, and she received an additional $25,000 in underinsured coverage from her host's carrier. The insured had UM/UIM coverage of $50,000 per person, $100,000 per occurrence with her own carrier, Mid–Century, and sought an additional $100,000 in UM/UIM benefits under that coverage. In refusing coverage, the insurance company relied on the two provisions of its policy which are identical to the provisions with which we are concerned.

The court denied the insured's claim, relying on two California cases, *Hefner v. Farmers Insurance Exchange*, 211 Cal.App.3d 1527, 260 Cal.Rptr. 221 (1989) and *Mid–Century Insurance Co. v. Gardner*, 9 Cal. App. 4th 1205, 11 Cal.Rptr.2d 918 (1992), which collectively analyzed identical provisions to those at issue here.

In *Hefner*, the insured was injured while a passenger in a vehicle that was struck by an uninsured motorist who, like here, was entirely at fault. Her host's carrier paid her $50,000 in UM/UIM benefits. The insured had UM/UIM coverage with her insurance company, Farmers, with limits of $100,000 per person, $300,000 per occurrence and sought additional UM/UIM benefits from Farmers to the extent of her uncompensated injuries which both Farmers and the trial court denied.

On appeal, Farmers contended that its insured's claim was excluded from coverage because she was an occupant in a nonowned vehicle covered by uninsured motorist insurance, *i.e.*, she fell within Exclusion Four. In concluding that the term "this coverage" in the exclusion was ambiguous as a matter of law, the court stated:

[W]e interpret 'this coverage' to mean uninsured motorist coverage with the limits contained in the policy in which the language is used (Farmers policy). *Since [the tortfeasor's] policy limits were less than the Farmers's policy limits, the exclusion does not apply.* This interpretation places appellant in the same position she would have been in had she been driving her own vehicle when this accident occurred.

*Hefner v. Farmers Insurance Exchange, supra*, 211 Cal.App.3d at 1534–35, 260 Cal.Rptr. at 225–26 (emphasis added).

In *Gardner*, the insured was injured while he was operating a vehicle owned and insured by his closely held corporation in an accident involving an uninsured motorist. The insured collected UM/UIM benefits from his corporation's carrier but his damages were substantially in excess of the policy limits. The insured also privately insured several "personal" vehicles owned by the corporation and claimed UM/UIM benefits under the private policies. The appellate court concluded that the insured was entitled to benefits.

The *Gardner* court followed the *Hefner* court with respect to the application of "Ex-

clusion Four" and then construed and applied an "Other Insurance" provision identical to Section Four and found that it was ambiguous as a matter of law whether read in isolation or in conjunction with the exclusion construed in *Hefner*. It concluded that the "Other Insurance" provision did not preclude coverage, noting that:

> First of all, it is far from clear what this exclusion was intended to cover. Its phraseology is odd, stating the insurer 'will not *provide insurance* for a vehicle.' . . . If it indeed is intended to mean the same thing as the other exclusion [Exclusion number four here], then it is subject to the same defect found in *Hefner*. If it means something different, then there is an irreconcilable conflict between the two clauses. In such a case, the provision that affords coverage—here the 'Exclusions' exclusionary clause, as construed by *Hefner*—controls.

*Mid–Century Insurance Co. v. Gardner*, 9 Cal.App.4th at 1219, 11 Cal.Rptr.2d at 927.

In harmonizing *Hefner* and *Gardner* with Wyoming law, the court in *Howton* stated that, under the facts presented, it did not have to determine whether the exclusion and "Other Insurance" provisions were ambiguous because it would reach the same result regardless. The court noted that, as here, the insured had received benefits from the other carriers in an amount equalling her own "per person" policy limits for UM/UIM coverage. That amount equaled the total amount she would have received if she had been the driver of the car in which she was injured.

■ We adopt the reasoning in *Hefner, Gardner,* and *Howton,* and hold Exclusion Four is not applicable until the insured receives benefits from the liability carrier and other UM/UIM benefits equal to the benefit provided by the insured's own policy. That is precisely what did not occur in *Hefner* and *Gardner* so benefits were available and did occur in *Howton* and has occurred here so no additional benefits are available. We also conclude that Section Four is ambiguous. Therefore, it will be construed against the carrier and will not defeat any coverage not excluded by Exclusion Four.

We consider our conclusion as being in accord with our supreme court's decision in *Alliance Mutual Casualty Co. v. Duerson,* 184 Colo. 117, 518 P.2d 1177 (1974) which construed and applied an "Other Insurance" provision of a policy. In *Duerson,* the insured was injured while riding as a passenger on a motorcycle that was struck by a car driven by an uninsured motorist. As here, both the insured's and the host's policy provided the same amount in UM/UIM coverages. The host's carrier paid the insured $10,000, the full policy limits, and the insured sought an additional $10,000 from her carrier.

The supreme court interpreted the insured's policy as permitting recovery only if the insured's policy limits exceeded that of the host. The court went on to hold that this provision did not violate public policy because the insured recovered the statutory amount, and stated:

> [W]e find nothing offensive to public policy in an 'other insurance' clause which denied recovery of additional sums over and above that provided by the primary insurance carrier.

*Alliance Mutual Casualty Co. v. Duerson, supra,* 184 Colo. at 122–23, 518 P.2d at 1180.

The court went on to state:

> In our view, however, the legislative intent is satisfied by coverage which assures that one injured by an uninsured motorist will be compensated at least to the same extent as one injured by a motorist who is insured in compliance with the Motor Vehicle Financial Responsibility Law. . . .

*Alliance Mutual Casualty Co. v. Duerson, supra,* 184 Colo. at 124, 518 P.2d at 1181.

We recognize that our construction and application of Exclusion Four, as Walther has ably argued, is not without its grammatical infirmities. That is, the terms "injured person" and "you" can be the same individual even though that individual is referred to in both the second and third person in the same sentence.

In any event, we conclude, as did the trial court, that Exclusion Four and Section Four, as interpreted, prevent Walther from recov-

ering more than the policy limits of her UM/UIM coverage. Thus, because Walther has been compensated by other insurance to the same extent as she would have been under the terms of her own policy if she had been injured by a fully uninsured motorist, she is not entitled to additional compensation under her policy.

Therefore, we uphold the trial court's determination that Walther was not entitled to coverage under the policy. In light of this conclusion, we need not address the scope and applicability of other provisions of the policy argued by the parties.

### III.

■ We do address Walther's final contention, however, and conclude that Exclusion Four and Section Four, as interpreted above, do not violate public policy.

Section 10–4–609, C.R.S. (1994 Repl.Vol. 4A) requires insurers to offer minimum levels of both uninsured and underinsured motorist coverage in every motor vehicle liability policy issued to an insured. The statute limits the maximum amount of coverage for both types of insurance. Specifically, § 10–4–609(5), C.R.S. (1994 Repl.Vol. 4A) provides that the maximum liability of an insurer for UM/UIM coverage shall be the lesser of:

> (a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>
> (b) The amount of damages sustained, but not recovered.

■ The purpose of the UM/UIM motorist coverage available pursuant to § 10–4–609 is to compensate fully an innocent insured for loss, *subject to the insured's policy limits*, caused by financially irresponsible motorists. *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo.1989).

Section 10–4–609 does not require full indemnification of losses suffered at the hands of underinsured motorists under all circumstances. *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo. 1990). Rather, our supreme court has stated that the "intent of the legislature is served

when a person injured by an uninsured or *underinsured motorist receives insurance coverage to the same extent as a person injured by an insured motorist.*" *Union Insurance Co. v. Houtz, supra*, at 1064 (emphasis added).

■ Accordingly, § 10–4–609 has been construed to allow certain offsets of amounts the insured receives from the tortfeasor's carrier and UM/UIM benefits the insured receives under a policy other than his or her own when injured by an uninsured motorist. *See Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302 (Colo.1993) (setoff for payments made by the tortfeasor's carrier); *Alliance Mutual Casualty Co. v. Duerson, supra* (uninsured motorist coverage). However, an insurer may not under similar provisions reduce UM/UIM benefits based on amounts an insured receives pursuant to "separate and distinct" insurance or through other agreements. *See Barnett v. American Family Mutual Insurance Co., supra* (social security disability insurance benefits); *Kral v. American Hardware Mutual Insurance Co., supra* (release-trust agreement); *Newton v. Nationwide Mutual Fire Insurance Co.*, 197 Colo. 462, 594 P.2d 1042 (1979) (personal injury protection benefits).

Exclusion Four and Section Four only prevent Walther from recovering an amount under her UM/UIM coverages that is duplicative of amounts paid by her host's UM/UIM coverage. To the extent, if any, that her UM/UIM coverage exceeds payments by or on behalf of the tortfeasor and her host's UM/UIM coverage, she would be entitled to recovery under the UM/UIM coverages of her own policy. This interpretation is consistent with our supreme court's decisions in *Barnett v. American Family Mutual Insurance Co., supra*, and *Alliance Mutual Casualty Co. v. Duerson, supra*.

In *Barnett v. American Family Mutual Insurance Co., supra*, at 1307 (fn. 4), the court noted that UM/UIM coverage that an insured receives from another carrier is not "separate and distinct" insurance, but rather serves the same purpose of protecting the insured from "financial loss caused by negli-

gent and financially irresponsible motorists." Furthermore, as previously noted, the court in *Alliance Mutual Casualty Co. v. Duerson, supra,* held that an "Other Insurance" provision that only allowed recovery under an uninsured motorist's policy to the extent that the limit of liability of the policy exceeded the limit in the policy held by a third person did not violate public policy.

The *Duerson* court specifically noted that the issue was not whether the provision prevented the "stacking" or "pyramiding" of coverage, and quoted *Putnam v. New Amsterdam Casualty Co.,* 48 Ill.2d 71, 86, 269 N.E.2d 97, 104 (1970), as follows.

'[W]e should consider the effect of plaintiffs' proposal that the policies should be "stacked" to allow full compensation. If such were mandated as a matter of public policy, motorists would be in the unusual position of preferring that any injuries sustained be at the hands of uninsured motorists rather than motorists who comply with the Financial Responsibility Law. In the case before us, for instance, plaintiffs have already recovered from their host's policy the amount they would have received had the tortfeasor been insured to the extent required by statute; but plaintiffs plead that they should be entitled to greater compensation, as a matter of public policy or legislative dictate, by virtue of the fact that the tortfeasor was not only a careless driver, but a financially irresponsible one as well.'

*Alliance Mutual Casualty Co. v. Duerson, supra,* 184 Colo. at 124, 518 P.2d at 1181

■ Therefore, based on *Duerson, supra,* we reject Walther's assertion that these provisions may be characterized as "anti-stacking provisions." Moreover, even if we agree that the provisions may be so characterized, our supreme court in *Shelter Mutual Insurance Co. v. Thompson, supra,* at 467, citing *Duerson* with approval, has recently held that "anti-stacking provisions are permissible in the uninsured motorist context."

■ We reject Walther's contention that the General Assembly's 1992 amendment to § 10–4–609(2), C.R.S. (1994 Repl.Vol. 4A) which provides that an automobile policy "shall not prohibit stacking of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative," is applicable to Walther's policy with Farmers. The amendment was enacted after the policy here was issued and after the accident upon which the claim was based.

Judgment affirmed.

PLANK and HUME, JJ., concur.